John R. TURNEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 27A02–0010–CR–644.

Court of Appeals of Indiana.

Dec. 13, 2001.

Rehearing denied Jan. 31, 2002

Donald W. Pagos, Sweeney, Dabagia, Thorne, Janes & Pagos LLP, Michigan City, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Following a jury trial, John R. Turney appeals his convictions and sentences for two counts of sexual misconduct with a minor,[1] as Class C felonies, and one count of sexual misconduct with a minor,[2] as a Class B felony. On appeal, Turney raises seven issues, one of which we find dispositive:

> In an action for sexual misconduct with a minor, evidence of child sexual abuse accommodation syndrome was introduced. Did the prosecution violate the due process rights of the defendant as set out in *Brady v. Maryland*[3] by withholding evidence of prior sexual misconduct by the minor.

We reverse and remand for a new trial.

### FACTS AND PROCEDURAL HISTORY[4]

The facts most favorable to the verdict reveal that during the 1998–1999 school year, Turney was responsible for supervising the Marion High School in-school suspension program ("ISS"). Students who violated school rules or posed disciplinary

---

1. *See* IC 35–42–4–9(b)(1).

2. *See* IC 35–42–4–9(a)(1).

3. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

4. We heard oral argument in this case on November 6, 2001, in Indianapolis.

problems were required to attend ISS class in lieu of their regular school schedule. Students sometimes also had to attend ISS after school on Friday and on Saturday mornings.

A.D.H., a female student at the high school, was assigned to ISS after school on Friday, February 5, 1999, and on Saturday morning, February 6, 1999, because she skipped school. On Friday evening, Turney engaged A.D.H. in conversation about partying, drinking, drugs, sex, and people they both knew. In particular, A.D.H. told Turney about her sexual experiences, and Turney informed A.D.H. that he enjoyed performing oral sex on girls. He also asked A.D.H. to bring him a suggestive picture of herself. Although A.D.H. thought it was "weird" that a teacher would discuss these topics with a student, she also thought it was "kind of cool" that a teacher could understand her and relate to her. *Transcript* at 463.

On Saturday morning, A.D.H., along with three boys, arrived at school for the ISS class. Turney took the boys to the gymnastics pit where he directed them to clean the area. A.D.H. remained with Turney in the classroom. While A.D.H. was filing papers, Turney came up behind her, put his hand on her chest, touched her breast, kissed her neck, licked her breast, unbuttoned and pulled down her pants and panties, knelt down, fondled her vagina, and performed oral sex. At A.D.H.'s urging, Turney stopped to check on the boys in the gym. A.D.H. was afraid to leave the room for fear she would get into further trouble for leaving ISS. When Turney returned, he placed her hand on his penis outside his clothing, again performed oral sex on her, and requested that she perform oral sex upon him. She refused and

asked Turney to check on the boys again. As he left, he told her that when he returned he was going to put her on his desk and perform oral sex again. Believing she would be safe in the gym, A.D.H. left the classroom and met Turney in the hall. He expressed concern that she would tell someone about the incident. A.D.H. assured him she would not.

Later that day, A.D.H. told her sister about the incident and that alcohol had been involved. Her sister encouraged her to tell authorities, but kept her secret. A.D.H. later recanted her story about alcohol being involved. Eventually, A.D.H. also told a close friend and the high school assistant principal. She also gave a statement to child protective services and to the police.

On June 29, 1999, Turney was charged with three counts of sexual misconduct with a minor. Following a five-day trial, the jury returned guilty verdicts on all three counts on July 1, 2000. After a sentencing hearing on September 18, 2000, the trial court sentenced Turney to six years' imprisonment on the Class B felony with three years suspended to probation. The court further sentenced Turney to three years' imprisonment for both Class C felonies and ordered the sentences served concurrently. On November 2, 2000, this court granted Turney's petition for bond pending this appeal.

## DISCUSSION AND DECISION

After trial, Turney discovered that the State had not disclosed to him that one year prior to the incident here at issue A.D.H. had engaged in sexual activity with two boys, whom he believes are the natural children of her foster parents.[5] Following

---

5. In the State's Affidavit attached to its second statement in opposition to Turney's motion to correct errors, the State notes that

A.D.H. apparently engaged in sexual activity with a fifteen-year-old boy and his twelve-year-old cousin. The twelve-year-old was the

discovery of the information, Turney's appellate counsel contacted the Grant County Prosecuting Attorney's Office and, in response, received a letter dated October 2, 2000, a portion of which follows:

> With regard to your question about the victim being accused of sexually molesting two boys, it did come to our attention prior to Mr. Turney's trial that during the winter and spring of 1998, when the victim was fourteen and fifteen years of age, she did participate in sexual activity with two under age boys, fifteen and twelve years of age. As you noted we did not disclose this information to defense counsel. We were under no obligation to do so.

*Appellant's Appendix* at 295. Turney argues that suppression of this evidence violated his right to due process and that his convictions must therefore be vacated. He specifically maintains that the State portrayed A.D.H. as an innocent victim and bolstered her credibility by introducing evidence of her emotional state after the incident and by introducing child sexual abuse accommodation syndrome evidence. Turney maintains that the State's purposeful failure to disclose this information to him prior to trial was compounded by the admission of child sexual abuse accommodation syndrome evidence. We agree.

 Due process requires that the State disclose to the defendant favorable evidence that is material to either guilt or to punishment. *Stephenson v. State,* 742 N.E.2d 463, 491 (Ind.2001) (citing *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Kyles v. Whitley,* 514 U.S. 419, 432, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). In *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the United States Supreme Court determined that the *Brady* rule encompassed both material impeach-

ment evidence and exculpatory evidence. The Court held that favorable evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. at 3383–84; *Kyles,* 514 U.S. at 433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490; *Stephenson,* 742 N.E.2d at 491. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *Bagley,* 473 U.S. at 678, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481. If this court finds that a "reasonable probability" exists, then the evidence is material under *Brady,* and its suppression from Turney results in constitutional error thereby warranting a new trial. *Kyles,* 514 U.S. at 434–36, 115 S.Ct. at 1558.

In *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the Court summarized three components of a *Brady* violation: (1) the evidence must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the State must have suppressed the evidence either willfully or inadvertently; and (3) prejudice must have occurred (i.e., the evidence must have been material). At oral argument, the State conceded that the evidence was favorable to Turney based upon its impeaching value and that the State willfully suppressed the evidence; however, the State maintains that no reversible error occurred because the evidence was not material.

Turney argues that the evidence was indeed material. He contends that the State suppressed evidence that the victim "had herself sexually molested two young boys" who were the natural children of her foster parents. *Appellant's Amended Brief* at 9. He argues, "In realty, [sic] the

child of her foster parents. *See Appellant's* *Appendix* at 328–29.

complaining witness herself was a child molester." *Id.* at 7. Turney claims the evidence was material because throughout the trial A.D.H. was portrayed as an innocent victim who was emotionally upset following the incidents and who was removed from her foster family because she had smoked cigarettes with the foster parents' children. He reasons that her own acts as a child molester provided an alternative explanation for her emotional upset and being removed from the foster family and that he was unable to elicit this during cross-examination of the State's witnesses. As a result, he claims this left the jury to infer that he was the cause of the victim's behavioral problems.

The State responds that even if the information had been disclosed to Turney, it would have been inadmissible pursuant to Ind. Evidence Rule 412(a), which provides that:

> In a prosecution for a sex crime, evidence of the past sexual conduct of the victim or witness may not be admitted, except:
>
> (1) evidence of the victim's or of a witness's past sexual conduct with the defendant;
>
> (2) evidence which shows that some person other than the defendant committed the act upon which the prosecution is founded;
>
> (3) evidence that the victim's pregnancy at the time of trial was not caused by the defendant; or
>
> (4) evidence of conviction for a crime to impeach under Rule 609.

According to the State, because evidence of the victim's prior sexual conduct fails to meet any of these exceptions, the evidence would have been inadmissible in any event. Citing *Steward v. State*, 636 N.E.2d 143 (Ind.Ct.App.1994), *aff'd* 652 N.E.2d 490 (Ind.1995), Turney counters that Evid. R. 412 must yield when a defendant is denied his Sixth Amendment right to cross-examine witnesses.

■ In *Steward*, as in the present case, the State presented expert testimony that the victim exhibited behavioral problems consistent with those experienced by victims of sexual abuse. At trial, Steward was not allowed to present exculpatory evidence that in addition to accusing him of the molestation, the victim had also accused other individuals of molesting her. On appeal, we began our analysis of the case by noting that a "trial court's exclusion of evidence must not prevent the defendant from conducting a full, adequate, and effective cross-examination." *Id.* at 148, 636 N.E.2d 143. Consistent with this rule, we observed and discussed the risk of "partial corroboration." *Id.* at 149, 636 N.E.2d 143.

> In partial corroboration, once there is evidence that sexual contact did occur, the witness's credibility is automatically "bolstered." This bolstering evidence invites the inference that because the victim was accurate in stating that sexual contact occurred, the victim must be accurate in stating that the defendant was the perpetrator. Therefore, in such cases, the defendant must be allowed to rebut this inference by adducing evidence that another person was the perpetrator.
>
> In other words, the risk of partial corroboration arises when the State introduces evidence of the victim's physical or psychological condition to prove that sexual contact occurred and, by implication, that the defendant was the perpetrator. Once admitted, such evidence may be impeached by the introduction through cross-examination of specific evidence which supports a reasonable inference and tends to prove that the conduct of a perpetrator other than the defendant is responsible for the victim's condition which the State has

placed at issue. . . . [W]e emphasize that both the necessity for and the constitutional right to such cross-examination are limited to these specific and narrow circumstances and clearly do not permit a general inquiry into the victim's sexual past or allow the defendant to posit hypothetical perpetrators, an inquiry which would violate the Rape Shield Statute.

*Id.* Applying the above rule, this court determined that the State "opened the door" for Steward to introduce exculpatory evidence through cross-examination of the prior molestations. We reasoned that using the Rape Shield Statute [6] to exclude evidence establishing "another possible source" of the victim's behavioral problems impeded a defendant's ability to rebut inferences that the jury was allowed to draw from the expert testimony concerning child sexual abuse accommodation syndrome:

> In other words, the State was allowed to take advantage of the inculpatory conclusion, but Steward was prohibited from placing the exculpatory conclusion before the jury. While we have held that it is permissible to admit evidence of child sexual abuse syndrome to show that sexual contact occurred, . . . the State cannot use the Rape Shield Statute both as a shield and as a sword. It is error to apply a rule 'mechanistically to prohibit the defense from either offering its version of the facts or assuring through cross-examination that the trier of fact has a satisfactory basis for evaluating the truth of the witnesses' testimony.' *Saylor* [*v. State,*] 559 N.E.2d [332,] 335 [ (Ind.Ct.App.1990) ].

*Id.* at 150.

■ Here, despite the State's argument on appeal, it nevertheless offered evidence at trial that A.D.H.'s behavior and emotional upset were consistent with a child who had been sexually abused. At trial, over Turney's objection, Marianne Pearcy, a clinical psychologist, testified as an expert witness for the State that research in the field of child sexual abuse generally recognizes that victims of child sexual abuse oftentimes display certain behavior patterns that would normally be considered by laypersons to suggest that no abuse had in fact occurred. Pearcy testified that "considerable research" supported this phenomenon. *Transcript* at 884. In describing child sexual abuse accommodation syndrome, Pearcy testified that, in general, children who have been sexually abused display certain behavior characteristics or patterns, such as secrecy about the sexual abuse, failure to flee from the perpetrator or the abusive environment, a delay in reporting or a failure to report the abuse, and feelings of guilt. Other witnesses, including A.D.H., testified that she specifically displayed these behaviors following the incident.

Further, the State's theory at trial was that A.D.H. was an innocent victim and sexually pure. As in *Steward,* the State bolstered its theory with expert testimony concerning child sexual abuse accommodation syndrome, thereby opening the door to the introduction of evidence by Turney of A.D.H.'s prior sexual conduct, which would have provided another possible explanation for her behavior.

The State attempts to distinguish the present case from *Steward* by contending that no evidence was presented that A.D.H. accused another adult of molesting

---

6. *See* IC 35–37–4–4. Effective January 1, 1994, the Indiana Supreme Court adopted the Indiana Rules of Evidence. Evid. R. 412, commonly referred to as the Rape Shield Rule, embodies the basic principles of Indiana's Rape Shield Statute. *Graham v. State,* 736 N.E.2d 822, 824 (Ind.Ct.App.2000).

her. Recently, in *Davis v. State*, 749 N.E.2d 552, 555–56 (Ind.Ct.App.2001), *trans. denied*, we reaffirmed the principles announced in *Steward* by holding that exclusion of a victim's prior sexual conduct unfairly bolstered the victim's trial testimony. In *Davis*, evidence was presented that a medical examination following the molestation revealed that the victim had been sexually active prior to the incident. In response, Davis attempted to introduce evidence establishing that the victim had been sexually active with individuals other than him. Relying on the Rape Shield law, the trial court refused to allow Davis to introduce the evidence. On appeal, we reversed Davis's child molesting convictions and noted:

> [W]hile L.P. accused Davis of having sex with her, the jury was precluded from hearing that L.P. was having sex with others at age twelve. Such exclusion unfairly bolstered her testimony, inasmuch as the inference arises that, because L.P. was accurate in stating that sexual contact had occurred, as disclosed by the physical examination, she also must have been accurate in stating that Davis was the perpetrator of the charged offenses. This is the type of erroneous inference we sought to prevent from occurring under our holding in *Steward*. *We therefore reject the State's argument that this case differs from the circumstances that were presented in Steward. In this case, as well as in Steward, it was apparent that there could have been another possible source for the acts of molestation.*

*Id.* (emphasis added).

Under our holdings in *Steward* and *Davis*, Turney was entitled to impeach the child sexual accommodation syndrome evidence through cross-examination which could have established another possible source for A.D.H.'s emotional upset. Ac-

cordingly, given the circumstances of the present case, Evid. R. 412 would similarly not bar evidence of A.D.H.'s prior sexual conduct while in foster care.

Additionally, we conclude that based upon the theory that the State advanced at trial, the prior acts of A.D.H. were material. Because the evidence concerned A.D.H.'s credibility as a witness, had the State disclosed the evidence it may not have offered evidence concerning A.D.H.'s emotional state or child abuse sexual accommodation syndrome evidence.

■ In sex-related cases, which often turn largely on questions of credibility, we are ever mindful that: "The jury's estimate of the truthfulness and reliability of a witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *See State v. Bowens*, 722 N.E.2d 368, 370 (Ind.Ct.App. 2000) (quoting *Lewis v. State*, 629 N.E.2d 934, 937–38 (Ind.Ct.App.1994)). Under *Brady*, the State has the obligation to make a decision concerning what information to disclose to the accused at the time of the accused's request. However, a prosecutor's decision whether to disclose information is ultimately judged post-trial. The function of the prosecution is to insure justice, not to procure convictions at any cost. *Bowens*, 722 N.E.2d at 369 (quoting *Birkla v. State*, 263 Ind. 37, 41, 323 N.E.2d 645, 648 (1975), *cert. denied*). In sex-related cases, the State does not have the obligation to disclose the entire sexual history of the victim, but, it does have the duty to disclose evidence favorable to the accused. Therefore, in such cases we will judge whether the prosecution should have disclosed information prior to trial based upon the evidence presented at trial.

Here, the introduction of the child sexual abuse accommodation syndrome evi-

dence made the disclosure mandatory. Therefore, we are compelled to conclude that under the circumstances of this case the State violated *Brady* by failing to disclose the information. As a result, Turney's convictions may not stand. We therefore reverse the convictions and remand to the trial court for a new trial.

Because the issue may again arise during retrial of the case, we address the question of the introduction of evidence under Evid. R. 404(b). Prior to trial, Turney filed a Motion in Limine seeking to exclude the testimony of three female students who were expected to testify that Turney had engaged them in conversations of a sexual nature and requested nude photographs from two of the teenagers. The trial court denied the motion.

At trial, the court held a hearing outside the presence of the jury immediately before each witness testified to determine the admissibility of her testimony. Ultimately, over the objection of Turney, the witnesses were permitted to testify. C.D. testified that Turney requested that she wear a mini-skirt to his ISS class so that he could see her "butt." A.C. testified that after Turney asked her to bring him a nude photograph of herself, she felt uncomfortable and was afraid to return to his classroom. She further explained that Turney told her he had other similar pictures. N.O. also testified that Turney asked her for a nude photograph of herself. She further stated that Turney asked her out to dinner and a movie, discussed having a party at his house, and in response to seeing her tongue piercing, commented: "Wow, what what [sic] could be done with that." *Transcript* at 775.

Turney now argues that the admission of this evidence violated Evid. R. 404(b) and denied him a fair trial. He maintains that the State's actual purpose in admitting this evidence was solely to prove the forbidden inference that Turney was predisposed to committing the crimes.

■ Indiana Evidence Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence "may be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* The rule is intended to prevent the jury from determining a defendant's present guilt upon his past propensities, the so-called "forbidden inference." *Byers v. State*, 709 N.E.2d 1024, 1026–27 (Ind.1999); *Hicks v. State*, 690 N.E.2d 215, 218–19 (Ind.1997).

■ It is well settled that in determining the admissibility of 404(b) evidence, the trial court must: (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Evid. R. 403. *Roop v. State*, 730 N.E.2d 1267, 1270 (Ind. 2000); *Boone v. State*, 728 N.E.2d 135, 137–38 (Ind.2000); *Hicks*, 690 N.E.2d at 221. Therefore, evidence may be admissible in spite of its tendency to show bad character or criminal propensity, if it makes the existence of an element of the crime charged more probable than it would be without the evidence. *Lannan v. State*, 600 N.E.2d 1334, 1339 (Ind.1992). However, even if such evidence is relevant, it may be excluded pursuant to Evid. R. 403 if its probative value is substantially outweighed by the danger of unfair prejudice. The evidence is inadmissible when the State offers it only to produce the "forbidden inference" that the defendant has engaged in other, uncharged misconduct, and the charged conduct was in con-

formity with the uncharged misconduct. The trial court has wide latitude in balancing the probative value of the evidence against the possible prejudice of its admission, and its ruling will only be reviewed for an abuse of discretion. *Crain v. State*, 736 N.E.2d 1223, 1235 (Ind.2000) (citing *Hicks*, 690 N.E.2d at 219). Further, a claim that a trial court erred in the admission of evidence will not prevail on appeal unless the error affects the substantial rights of the moving party. *McCarthy v. State*, 749 N.E.2d 528, 536 (Ind.2001).

█ The State argued at trial that the evidence was relevant and admissible to show Turney's motive, preparation, plan, and intent. Although Turney may have engaged in sexual conversations with other students, this does not necessarily indicate that he had a plan to perform oral sex upon A.D.H. He was not accused of, nor does the record before us indicate that he committed, any sexual acts upon any of the three 404(b) witnesses. Accordingly, the evidence was inadmissible to prove preparation or plan given its minimal probative value. Moreover, because the conversations were not directly tied to his relationship to A.D.H., the evidence was inadmissible to prove motive given its complete lack of probative value. Finally, Turney's intent was not placed in issue so as to justify admission under the intent exception. Under any of these circumstances, we conclude that the probative value of the evidence is outweighed by its prejudicial effect.

Reversed and remanded.

BAILEY, J., and BROOK, J., concur.