**Sherry Pierce SALLEE, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 55A05–0201–CR–26.

Court of Appeals of Indiana.

March 27, 2003.

William Van Der Pol, Jr. Martinsville, IN, Attorney for Appellant.

Stephen R. Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Defendant–Appellant Sherry Pierce Sallee ("Pierce") appeals her convictions of criminal deviate conduct, a Class A felony, and criminal confinement, a Class D felony. We affirm.

Pierce raises four issues for our review, which we renumber and restate as:

I. Whether the trial court abused its discretion in not allowing Pierce to present evidence of the victim's sexual history.

II. Whether the trial court erred in ordering the sentences to be served consecutively.

III. Whether the sentence was manifestly unreasonable.

IV. Whether the trial court committed reversible error in denying Pierce's request to suppress evidence seized during a warrantless search of Pierce's purse.

The facts most favorable to the verdicts reveal that on April 9, 2001, the victim, an eighteen-year-old female, left her apartment to go to a nearby BigFoot service

station. Pierce and her then-boyfriend, Edward Sallee ("Sallee"), approached the victim, and Sallee offered the victim twenty dollars if she would give them a ride to their house.[1] The victim agreed to give them a ride, but she refused payment.

Sallee got into the back seat of the victim's car, and Pierce rode in the front seat. The victim drove the car until her passengers told her to pull over at a gravel road. The victim put the car in neutral, and Sallee grabbed her from behind and attempted to pull her into the backseat with Pierce's help. The victim screamed and kicked and managed to hit the car horn with her foot before Sallee pulled her into the backseat with him. Pierce got into the driver's seat and drove away. The victim huddled in the back and told her passengers to take her money or her car but to drop her off. Pierce told the victim to be quiet, or she would kill her.

Concerned that the victim would be able to see where they were going, Sallee put a t-shirt over the victim's head and fastened it with duct tape around her neck. The t-shirt only partially blocked the victim's vision. Both Pierce and Sallee told the victim that if she did not do everything right, they would kill her.

Pierce then drove to a wooded area and stopped at a black and white house surrounded by trees. Pierce and Sallee took the victim into the house and sat her on a bed. They told the victim to keep her eyes shut, removed the t-shirt, and placed duct tape over the victim's eyes.

Over the course of the next hours, Pierce and Sallee forced the victim to perform or submit to various sexual acts. The victim was forced to perform oral sex on both Pierce and Sallee; both Pierce and Sallee performed oral sex on the victim; Sallee penetrated the victim's vagina with his penis; and Pierce used a sexual device to penetrate the victim's vagina. In addition to the sexual acts, Pierce and Sallee forced the victim to smoke and snort what they called "crank," which made the victim sick at her stomach. The victim complied with all of their demands because she was afraid for her life; numerous times, Pierce and Sallee told the victim that if she saw anything or if she told anyone, they would kill her.

Pierce and Sallee returned the victim's clothes to her and when she was dressed, put her in the backseat of her car. They dropped her off at the side of the road and told her that her car would be in the local Wal–Mart parking lot. They then drove away. The victim removed the duct tape from her eyes and flagged down a passing car driven by her roommate, A.B. When the victim told A.B. that she had been raped, A.B. took her to the police department to speak with police and then to the hospital, where doctors performed a physical examination.

A security tape at the Wal–Mart revealed that after the victim's car had been driven into the lot, two unidentified individuals had departed the car and entered a small pickup truck. The pickup truck had been parked in the back part of the lot. The investigating officers were unable to ascertain who the truck belonged to, but they did observe that the truck was painted in a camouflage pattern.

Pierce and Sallee were arrested approximately one month after the incident. Pierce was charged with criminal deviate conduct, a Class A felony; sexual battery,

---

1. Sallee, who later married Pierce, was also charged as a result of this incident. Pierce and Sallee were tried as co-defendants during the same jury trial. He, too, was found guilty as charged. His convictions were affirmed by this court. *See Sallee v. State,* 777 N.E.2d 1204 (Ind.Ct.App.2002), *trans. denied.*

a Class C felony; and criminal confinement, a Class D felony. Following a jury trial, Pierce was convicted on each of the charges and later sentenced to a total of fifty-three years.[2] She now appeals.

## I.

Pierce contends that the trial court erred in excluding her proffered evidence regarding the victim's prior sexual history. Pierce asserts that the trial court's ruling deprived her of a fair trial.

▬▬ The trial court has broad discretion in ruling on the admission of evidence. *Jackson v. State,* 697 N.E.2d 53, 54 (Ind. 1998). A trial court's ruling on the admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Platt v. State,* 589 N.E.2d 222, 229 (Ind.1992). In determining the admissibility of evidence, this court will only consider the evidence in favor of the trial court's ruling and unrefuted evidence in the defendant's favor. *Brand v. State,* 766 N.E.2d 772, 778 (Ind.Ct.App.2002), *trans. denied.*

▬▬ The admission of evidence pertaining to a victim's past sexual conduct is governed by Indiana Evidence Rule 412. This rule provides that, with very few exceptions, evidence of a victim's past sexual conduct may not be admitted. The rule states the exceptions to the general rule as (1) evidence of the victim's past sexual conduct with the defendant; (2) evidence which shows that some person other than the defendant committed the act upon which the prosecution is founded; (3) evi-

dence that the victim's pregnancy at the time of trial was not caused by the defendant; or (4) evidence of conviction for a crime to impeach under Rule 609. In addition to these enumerated exceptions, a common-law exception has survived the 1994 adoption of the Indiana Rules of Evidence. *See Graham v. State,* 736 N.E.2d 822, 825 (Ind.Ct.App.2000), *trans. denied.* This exception provides that evidence of a prior accusation of rape is admissible if: (1) the victim has admitted that her prior accusation of rape is false; or (2) the victim's prior accusation is demonstrably false. *Id.*

Pierce sought to introduce evidence to counteract alleged assertions by the State that the victim was sexually naïve and to attack her credibility.[3] She proffered evidence that the victim first engaged in sexual intercourse at the age of fourteen. She also wished to introduce evidence that the victim stated in a pre-trial deposition that her "guess" was that she had last had intercourse with her sometimes boyfriend "a couple of months" prior to this incident, while her boyfriend stated in his deposition that sexual intercourse between the two had most likely occurred within days before the incident. This evidence does not fit into any of the exceptions listed in Evid.R. 412. Pierce contends, however, that the evidence impacted her Sixth Amendment right to present evidence.

▬▬ Evid.R. 412 "is intended to prevent the victim from being put on trial, to protect the victim against surprise, harassment, and unnecessary invasion of privacy, and, importantly, to remove obstacles to reporting sex crimes." *State v. Walton,*

---

2. The trial court merged the sexual battery conviction into the criminal deviate conduct conviction.

3. Pierce also contends that the evidence was necessary to overcome the State's position that the victim was "young." It is undisputed that the victim was nineteen-years-old at the time of trial.

715 N.E.2d 824, 826 (Ind.1999) (quoting *Williams v. State*, 681 N.E.2d 195, 200 (Ind.1997)). Evid.R. 412 "appears to be a stylistic revision of Indiana's Rape Shield Act, and so brings only slight change to Indiana law." Miller, 12 *Indiana Practice* § 412.101, p. 542 (1995 ed.) (citing Ind. Code § 35–37–4–4). To the extent there is a difference between the two, the rule controls. *Graham*, 736 N.E.2d at 824–25. The Rape Shield Act has repeatedly been found constitutional on its face so long as it does not violate a defendant's right to cross-examination. *Id.* at 826–27.

■ The constitutionality of an act or rule "as applied to preclude particular exculpatory evidence remains subject to examination on a case by case basis." *Steward v. State*, 636 N.E.2d 143, 148 (Ind.Ct. App.1994), *aff'd*, 652 N.E.2d 490 (Ind. 1995). The trial court's exclusion of evidence must not prevent the defendant "from conducting a full, adequate, and effective cross-examination." *Id.* Thus, this court has held that "the validity of precluding particular exculpatory evidence should be determined on a case-by-case basis to assure that no violation of the right to cross-examination has occurred." *Clark v. State*, 728 N.E.2d 880, 887 (Ind.Ct.App. 2000), *trans. denied*.

■ Here, the State emphasizes that Evid.R. 412(b) requires that a defendant, absent a showing of good cause, must file a written motion at least ten days before trial describing any evidence of past sexual conduct that she proposes to offer. Pierce did not give such notice or make a showing of good cause to the trial court. In addition, she does not address the issue of notice in either her initial or her reply brief. It appears that her failure to do so is based upon a belief that the requirements of Evid.R. 412(b) only apply when a defendant is proposing to offer evidence pertaining to one of the exceptions listed in Evid.R. 412(a).

■ Unlike Ind.Code § 35–37–4–4(c), which requires special procedures only when the defendant proposes to offer evidence pertaining to the exceptions listed in a prior subsection, Evid.R. 412(b) requires the defendant to give written notice any time the defendant proposes to offer evidence under "this rule." [4] We read "this rule" as referring to both the general rule prohibiting the admission of past sexual conduct and the exceptions listed thereafter. This reading of the rule is consistent with both the language and the intent of the rule.[5]

Pierce's failure to comply with Evid.R. 412(b) precluded her from presenting evidence of the victim's past sexual history. Her failure also results in waiver of this issue on appeal.

■ Furthermore, even if Pierce had complied with the requirements of Evid.R. 412(b), she still would not prevail. The

---

**4.** Evid.R. 412(b) provides:
   If a party proposes to offer evidence under this rule, the following procedure must be followed:
   (1) A written motion must be filed at least ten days before trial describing the evidence. For good cause, a party may file such motion less than ten days before trial. (2) The court shall conduct a hearing and issue an order stating what evidence may be introduced and the nature of the questions to be permitted.

**5.** We note that in *Graham* we also held that the procedural requirements of Evid.R. 412(b) obtain when the defendant proposes to offer evidence of the victim's prior false accusations of rape. 736 N.E.2d at 826. We arrived at our holding by referring to language found in *Walton* rather than the language of the rule itself. *But see, Sallee*, 777 N.E.2d at 1211, n. 6 (interpreting Evid.R. 412(b) by reference to the language of Ind.Code § 35–37–4–4(c)).

offer of evidence that the victim first engaged in sexual intercourse at fourteen was premised on Pierce's contention that the State had characterized the victim as sexually naïve. In support of this contention, Pierce cites this court to a portion of the prosecutor's opening statement, which, of course, is not evidence. In the cited portion, the prosecutor makes reference to the victim's obvious youth, but she does not refer to any sexual naïvete. In fact, the victim later testified that she had cohabited with her sometimes boyfriend for a short period of time. Under these circumstances, the trial court did not abuse its discretion in prohibiting Pierce from offering the proffered evidence.

██ Pierce also argued both to the trial court and this court that it was necessary to point out the discrepancy between the victim's and the boyfriend's depositions to show that the victim was not credible. The trial transcript discloses that Sallee and Pierce vigorously attacked the victim's credibility throughout her testimony, comparing her testimony to the physical evidence, probing her financial situation, and using her previous deposition to impeach her.[6] We cannot say under the circumstances of this case that the trial court's ruling prevented Pierce from exercising her Sixth Amendment right to present a defense.

Pierce cites *Turney v. State*, 759 N.E.2d 671 (Ind.Ct.App.2001), *trans. denied,* and related cases for the proposition that the trial court's decision deprived her of her right to conduct an effective cross-examination and to confront her accuser.[7] These cases hold that using the Rape Shield Act "to exclude evidence establishing another possible source of the victim's behavioral problems impede[s] a defendant's ability to rebut inferences that the jury was allowed to draw from the expert testimony concerning child sexual abuse accommodation syndrome." *Id.* at 677. The facts of the present case differ significantly from the facts and circumstances in *Turney* and like cases; accordingly, the narrow, fact-sensitive exception to the Rape Shield Act stated therein does not apply in the case before us.

Pierce contends that her convictions of and sentences for criminal confinement and criminal deviate conduct constitute a violation of the double jeopardy provisions found in Article 1, Section 14 of the Indiana Constitution. Specifically, Pierce contends that the convictions and sentences fail under the "actual evidence test" set forth by our supreme court in *Richardson v. State*, 717 N.E.2d 32, 53 (Ind.1999).

██ In order to show that two challenged offenses constitute the same offense under the actual evidence test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson,* 717 N.E.2d at 53. Application of the actual evidence test requires the reviewing court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective, considering relevant jury instructions, argument of counsel, and other factors that may have guided the jury's determination. *Spivey v. State,* 761 N.E.2d 831, 832 (Ind.2002). Under the

---

6. It was Sallee's and Pierce's contention that the victim initiated the sexual contact by offering to have sex with Sallee and Pierce if they would steal her car, as she was unemployed and trying to sell the car.

7. Pierce also cites *Steward* and *Davis v. State,* 749 N.E.2d 552 (Ind.Ct.App.2001), *trans. denied.*

actual evidence test, Indiana's double jeopardy clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. *Id.* at 833.

■ Here, Pierce asserts that there is a reasonable possibility that the evidentiary facts used by the jury to find her guilty of criminal deviate conduct as a Class A felony were also used to find her guilty of confinement. In essence, Pierce argues that her conviction and sentence for criminal confinement as a Class A felony cannot stand under the fourth of five formulations first enumerated by Justice Sullivan in *Richardson* and then noted by our supreme court in *Guyton v. State,* 771 N.E.2d 1141, 1143 (Ind.2002). Under this formulation, Indiana's double jeopardy clause is violated when there is "conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished." *Id.* (quoting *Richardson,* 717 N.E.2d at 55–57 (Sullivan, J., concurring)).

The information charging Pierce with confinement states that "on or about April 9, 2001, in Morgan County, State of Indiana, [Pierce] did knowingly confine [the victim] without the consent of [the victim]." Appellant's App. at 422. The Class D felony of confinement occurs when a person knowingly or intentionally "confines another person without the other person's consent." Ind.Code § 35–42–3–3.[8]

The information charging Pierce with criminal deviate conduct states that "on or

about April 9, 2001, in Morgan County, State of Indiana, [Pierce] did knowingly cause [the victim], another person, to submit to deviate sexual conduct when [the victim] was compelled to do so by force and threatening [of] the use of deadly force." Appellant's App. at 422. The Class A felony of criminal deviate conduct occurs when a person knowingly or intentionally "causes another person to perform or submit to deviate sexual conduct" and "it is committed by using or threatening the use of deadly force." Ind.Code § 35–42–4–2.

■ The victim testified at trial that after she pulled her car off the road, she was forced into the back seat by Pierce and Sallee. The victim also testified that Pierce assisted Sallee in forcing the victim into the back seat and that Pierce then drove the car while Sallee placed the t-shirt over the victim's head. Pierce and Sallee refused to let the victim out of the car despite her pleas that they do so. These facts, without reference to any subsequent events, are sufficient to support Pierce's conviction of confinement.

■ The victim testified that the sexual attacks began in Pierce's house. During these attacks, the victim was told on numerous occasions that Pierce and Sallee would kill her if she did anything wrong. Because of the tape over her eyes, the victim was unable to ascertain whether Pierce and Sallee had a weapon. She submitted to their attacks, however, because she believed that they would follow through on their threats. These threats of deadly force enabled Pierce to commit several acts of criminal deviate conduct, and they are separate from the confinement

---

**8.** Both Pierce and the State refer to the "threat of force" element of confinement in their briefs. *See* Appellant's Brief at 23; Appellee's Brief at 25. We note that there is no "threat of force" element in confinement as charged against Pierce. *See Sallee,* 777 N.E.2d at 1213, n. 7.

which occurred in the car. No double jeopardy relief is provided where the behavior forming the basis of the enhancement is separate and distinct. *Richardson,* 717 N.E.2d at 56.

### III.

■ Pierce contends that the trial court erred in imposing the maximum sentence for her two offenses and in requiring the sentences to be served consecutively.[9] Pierce argues that the sentences imposed do not reflect the considerations set forth in Indiana Appellate Rule 7.

■ We note that Indiana statutes authorize the enhanced and consecutive sentences imposed in this case. *See* Ind.Code § 35–38–1–7.1; Ind.Code § 35–50–1–2. Sentences which are authorized by statute will not be revised unless the sentences are inappropriate in light of the nature of the offense and the character of the offender. App.R. 7(B).[10] We will not substitute our opinion for that of the trial court. *See Sallee,* 777 N.E.2d at 1216.

Pierce argues that the enhanced and consecutive sentences are inappropriate in light of her character. Specifically, she argues that the trial court failed to give proper consideration to what she contends is a "complete lack of any criminal convictions" in her past. Brief of Appellant at 24.

The hearing transcript discloses that the trial court determined that Pierce had prior contact with the criminal justice system. The evidence indicates that Pierce had admitted to the misdemeanor of conversion

on a prior occasion and that she had been arrested in 1994 for operating a vehicle while intoxicated. The trial court ultimately determined that Pierce's record was neither a mitigator nor an aggravator.

The court then noted the aggravators in support of its conclusion that the sentences should be both enhanced and run consecutively. The court stated its belief that Pierce was likely to commit another offense because of her propensity to take on the personality of the "bunch of losers" she chose to associate with. Tr. 1173. This is a proper consideration under Ind.Code § 35–38–1–7.1(a)(1). The court also stated that it was considering the impact of the crime upon the victim, a valid aggravator. *See Smith v. State,* 695 N.E.2d 909, 911. The court further stated that it was considering the particular circumstances of the crime, including the fact that Pierce and Sallee sexually attacked the victim for over four hours and that they accomplished their abduction by taking advantage of a Good Samaritan.

In light of the trial court's statements, we cannot say that Pierce's relatively clean prior record was significant enough to offset the danger of repeat violations, the impact upon the victim, and the particular circumstances of the offense. Accordingly, we find the sentences to be appropriate.

### IV.

Pierce contends that the trial court abused its discretion in permitting the State to present evidence procured from her purse during a search of her vehicle.

---

**9.** The trial court sentenced Pierce to serve fifty years for the Class A felony of criminal deviate conduct. The trial court also sentenced Pierce to serve three years for the Class D felony of criminal confinement. The sentences were consecutive, for a total sentence of fifty-three years.

**10.** On July 19, 2002, our supreme court amended App.R. 7(B) effective January 1, 2003. The rule is directed to the reviewing court and sets forth the standard for review that is in effect at the time the decision or opinion is handed down. Although the sentence here was imposed prior to January 1, 2003, we apply the new rule.

Pierce argues that her consent to the search of the vehicle did not pertain to the search of the purse located in the vehicle. Pierce maintains that the trial court's denial of her in-trial motion to suppress the evidence was a violation of both the federal and state constitutions.

Before Pierce made her objection, the State presented evidence that Pierce and Sallee were seen standing around at the Bigfoot station approximately one month after the victim was attacked. They were "waiting for a ride," as they supposedly had been in April. Stephen Purtlebaugh, who had observed the couple approach the victim in April, called the police. The couple was approached by a Martinsville police officer, and Pierce gave the officer a driver's license as identification. Sallee claimed that he had no identification, and he told the officer that his name was "Darren Bryant."

Suspecting that Pierce and Sallee were trying to abduct another victim and that they were using the same plan that they used in April, Morgan County Sheriff's Department Detective Larry Sanders drove to the Wal–Mart parking lot to determine whether the camouflaged pickup truck was parked there. He did not find the truck in the Wal–Mart lot, but he did see it parked in the lot of a nearby fast food restaurant. He called in the license plate number and was informed that the truck belonged to Pierce.

Detective Sanders went to the Big Foot station to question Pierce and Sallee, but they had already left. Detective Sanders then observed Pierce's truck being driven down a local highway, and he called for a local police officer to make a stop. The stop was made, and Sallee exited the truck. Sallee first told Detective Sanders that his name was "Darren Bryant," but he gave proper identification after learning that Detective Sanders knew the real Bryant.

After Sallee was handcuffed, Detective Sanders approached Pierce, who was standing next to the truck. Detective Sanders asked Pierce if she would consent to a search of the truck, and she consented. Detective Sanders observed some marijuana in the ashtray, and he advised Pierce that she was under arrest. He then opened a purse located in the truck and found a roll of duct tape inside. Subsequent tests revealed that this duct tape was of common origin with the tape that had been placed over the victim's eyes. It was this duct tape that was the focus of Pierce's objection and suppression motion.

The Fourth Amendment protection against unreasonable search and seizure has been extended to the states through the Fourteenth Amendment. *Norris v. State,* 732 N.E.2d 186, 188 (Ind. Ct.App.2000). The fundamental purpose of the Fourth Amendment is to "protect the legitimate expectations of privacy that citizens possess in their persons, their homes and their belongings." *Id.*

For a search to be reasonable under the Fourth Amendment, a warrant is required unless an exception to the warrant requirement applies. *Id.* Because it is undoubtedly reasonable for the police to conduct a search once they have been permitted to do so, a consensual search is a well-established exception. *Id.* The search, however, must be within the scope of the consent given. *Pinkney v. State,* 742 N.E.2d 956, 960 (Ind.Ct.App.2001), *trans. denied.*

The scope of a consent search was discussed by the United States Supreme Court in *Florida v. Jimeno,* 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). In *Jimeno,* an officer stopped the defendant for a traffic violation and asked if he could

search the vehicle because he believed the defendant was carrying drugs in it. The defendant consented to the search, stating that he had nothing to hide. The officer then located a folded paper bag on the floorboard, opened it, and found cocaine inside. The Court upheld the search, stating:

> The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect? . . .
>
> The scope of the search is generally defined by its expressed object. . . . [The officer] had informed respondent that he believed respondent was carrying narcotics and that he would be looking for narcotics in the car. We think that it was objectively reasonable for the police to conclude that the general consent to search [the] car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of container. "Contraband goods rarely are strewn across the trunk or floor of a car." . . .

Respondent argues, and the Florida trial court agreed with him, that if the police wish to search closed containers within a car they must separately request permission to search each container. But we see no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness. A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization. . . .

111 S.Ct. at 1804 (citation omitted).

When reviewing the trial court's determination regarding the validity of a search, we consider the evidence favorable to the trial court's ruling and any uncontradicted contrary evidence. *Pinkney*, 742 N.E.2d at 960. The test is the sufficiency of the evidence. *Id.*

Here, Detective Sanders' description of his conversation with Pierce does establish that he asked for permission to search the truck and that he advised Pierce she did not have to consent. Detective Sanders' description does not, however, provide any indication of what the object of the search was at the time Detective Sanders secured the consent. We cannot make a determination about the objective reasonableness of opening a closed purse from the exchange between Detective Sanders and Pierce. Accordingly, we must conclude that the State failed to show that Pierce consented to the search of her purse. Thus, the trial court erred in denying Pierce's objection and motion to suppress the roll of duct tape.

Although we have determined that the trial court erred in denying Pierce's objection and motion to suppress, we must now examine whether the error was harmless. *See Gibson v. State*, 733 N.E.2d 945, 958 (Ind.Ct.App.2000). A Fourth Amendment error is subject to constitutional harmless error analysis. *Id.* An erroneous admission of evidence is harmless where "its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the party." Indiana Appellate Rule 66(A).

In this case, the victim gave a very detailed description of the sexual attacks committed by Pierce and Sallee. The victim testified that she met Pierce

and Sallee at the Big Foot station and agreed to give them a ride, testimony that was corroborated by an acquaintance who was at the Bigfoot station. The victim also testified that duct tape was placed over her eyes as a blindfold, and this testimony was corroborated by the witness who picked the victim up right after her release by Pierce and Sallee. This witness observed that the victim's face was red from temple to temple and that the victim had a shiny silver line on her forehead. In addition, Sallee testified that Pierce participated in sexual acts with himself and the victim. Furthermore, various police officers testified about the Wal–Mart surveillance tape, the link between Pierce's truck and the return of the victim's car to the lot, and the fact that at the time they were apprehended Pierce and Sallee were apparently using the same plan to abduct and sexually attack another victim. In light of this evidence, we conclude that the probable impact of the erroneous admission of the duct tape was sufficiently minor to warrant the conclusion that Pierce's substantial rights were not affected.

In summary, the trial court did not err in denying Pierce's request to present evidence of the victim's prior sexual activity. In addition, the trial court's imposition of enhanced and consecutive sentences was appropriate. Furthermore, any error in admitting the duct tape was harmless.

Affirmed.

RILEY, J., concurs.

SULLIVAN, J., concurring in result with separate opinion.

SULLIVAN, Judge, concurring in result.

I concur in result as to Parts I and II. I fully concur as to Parts III and IV.

With regard to Part I, I agree that the trial court did not err in excluding Pierce's proffered evidence of the victim's sexual history. I do not, however, agree that such exclusion is appropriately premised upon Pierce's failure to comply with the ten-day notice provision of Ind. Evidence Rule 412(b).

In this regard I am in agreement with the discussion of this court in *Sallee v. State,* 777 N.E.2d 1204, 1211 (Ind.Ct.App. 2002) to the effect that the ten-day notice requirement applies only with respect to evidence sought to be admitted as an exception to the general rule pursuant to Ind.Code § 35–37–4–4(b) (Burns Code Ed. Repl.1998). Although the majority here correctly observes that "[t]o the extent that there is a difference between [The Rape Shield Statute and Evid R. 412], the rule controls," I do not find any difference between the two in the context of the issue before us. Slip op at 6. Evidence Rule 412(a), covering exceptions to the general rule, tracks, virtually verbatim, the exceptions as set forth in I.C. § 35–37–4–4 itself, except that the Rule adds one more exception, i.e. use of the evidence of a conviction of a crime to impeach under Evidence Rule 609.[11]

Furthermore, and more importantly, under the circumstances of this case, it would seem illogical to require compliance with the ten day notice requirement when the

---

**11.** It should be noted that Rule 609 concerning impeachment allows evidence of several crimes which have been held to reflect adversely upon the witness's credibility or honesty. The only crime enumerated in Rule 609 which arguably involves the past sexual conduct of the witness is rape. One may merito-riously contend that the additional exception for impeachment purposes does not in any way dilute the conclusion that in all other respects the ten-day notice provisions of both the Rule and the statute are closely tied to the three exceptions which are found in each.

impetus for attempting to introduce the sexual history evidence did not arise until the trial itself when the State arguably attempted to paint the victim as young and/or sexually naive.

With regard to Part II, I concur but do so with two parenthetical observations. I would first observe that with respect to the matters being appealed, the majority states that the trial court "merged the sexual battery *conviction* into the criminal deviate conduct conviction." Op. at 650, n. 2 (emphasis supplied). However, although the jury returned a guilty verdict upon the sexual battery charge, the trial court did not enter a judgment of conviction upon that verdict and of course, in its "merger" order, did not sentence Pierce for that crime. *See Carter v. State,* 750 N.E.2d 778 (Ind.2001). Accordingly, as there was no conviction for sexual battery there is no need to vacate a conviction upon double jeopardy principles.

Secondly, I must respectfully disagree with the majority's conclusion, as drawn from our Supreme Court's decision in *Spivey v. State,* 761 N.E.2d 831 (Ind.2002), that there is not a double jeopardy violation unless proof of all of the essential elements of one offense also establish all of the elements of the second offense.

In an opinion of clarification upon rehearing of our decision in *Alexander v. State,* 768 N.E.2d 971 (Ind.Ct.App.2002). This court held:

"We thus reiterate our holding in *Alexander,* that the *Richardson* actual evidence test, as applied by our Supreme Court, has found double jeopardy to be violated where the evidentiary fact(s) establishing one or more elements of one challenged offense establish all of the elements of the second challenged offense. For there to be a double jeopardy violation it is not required that the evidentiary facts establishing *all* of the elements of one challenged offense also establish *all* of the essential elements of a second challenged offense. To be sure, if such is the case, double jeopardy has been violated, but that scenario is not the only situation in which double jeopardy prohibitions exist. Both of the offenses being analyzed for double jeopardy purposes must be viewed in the context of the other offense. If the evidentiary facts establishing any one or more elements of one of the challenged offenses establishes the essential elements of the second challenged offense, double jeopardy considerations prohibit multiple convictions." 772 N.E.2d 476, 478 (Ind.Ct.App.2002), *trans. denied.*

Be that as it may, I agree that in the case before us the crime of deviate sexual conduct was separate and distinct from the crime of criminal confinement and that the two convictions do not run afoul of double jeopardy protections.

Subject to the above, I concur in the affirmance of Pierce's convictions and the sentences imposed for those crimes.