**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CHRIS M. TEAGLE**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JESUS CRUZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 38A02-1212-CR-969 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JAY CIRCUIT COURT
The Honorable Brian D. Hutchison, Judge
Cause No. 38C01-1202-FA-3

**August 13, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Jesus Cruz appeals his convictions for two counts of class A felony child molesting of A.A. and three counts of class C felony child molesting of B.A. He argues that the evidence is insufficient to support his convictions, that the trial court abused its discretion in excluding evidence that he argues showed that someone else committed the acts of molestation, and that his forty-six-year aggregate sentence is inappropriate. We conclude that there is sufficient evidence to sustain his convictions, that he waived his claim that the trial court erred in excluding his evidence, and that he failed to carry his burden to show that his sentence is inappropriate. Therefore, we affirm his convictions and sentence.

**Facts and Procedural History**

The facts most favorable to the verdicts show that A.A. was born in July 1998, and her sister B.A. was born in September 2000. During all times relevant to this case, the girls' legal guardian was their grandmother ("Grandmother"). Between 2007 and 2010, Grandmother's employment often required her to travel overnight, and she hired Yvonne Sue Baumgartner ("Sue") to babysit the girls. Sue was married to Cruz in 2007, when she started babysitting the girls, and that is when the girls first met Cruz. He became a family friend. Sue and Cruz separated in late 2007 and subsequently divorced. However, Cruz continued to spend time with Sue, A.A., and B.A. Sue married Bill Thomas and moved into his home. Cruz continued to spend time with A.A. and B.A. at Bill's house. Sometimes Cruz lived with Sue and Bill. A.A. and B.A. spent nearly every weekend with Sue. Some nights, Cruz slept in the same bed as A.A. and B.A. Sue and Bill divorced, and Sue moved to the house next to

Bill's. Cruz continued to spend time with A.A. and B.A. at Sue's house and sometimes slept with them.

At Bill's house, Cruz began kissing A.A. on the mouth. He kissed her at least ten times over the course of a couple weeks. She tried to push him away, but he would "bear hug" her. Tr. at 82. He then began fondling A.A.'s breasts and vagina. "[A]lmost every night" that Cruz slept in the same bed as A.A. and B.A., he would wake A.A. and "feel [her] down there, [her] private." *Id*. at 82-83. Cruz put his finger in A.A.'s vagina. Once she slapped his face to get him to stop, but he told Sue and A.A. got in trouble. Cruz showed A.A. his penis and rubbed it against her private. Sometimes she saw "white, gooey looking stuff" come out of his penis. *Id*. at 134-35. Cruz put his penis in her mouth two times. He told her what "doggy style" meant and put his penis in her anus, causing her pain. *Id*. at 133. Cruz also put his tongue in A.A.'s vagina. Cruz molested A.A. about ten or twenty times at Bill's house and fifteen to twenty-five times at Sue's house. Also, Cruz and A.A. twice showered together. Cruz warned A.A. not to tell anyone about what he did to her. He promised to buy her gifts if she did not tell anyone. He bought her ice cream, clothes, a cell phone, jewelry, and underwear.

Cruz also kissed B.A. on the mouth. B.A. "tried to push him away and he wouldn't." *Id*. at 117. She was so stunned that she brushed her teeth afterward. Two or three times when Cruz was sleeping with her and A.A., B.A. woke up to find Cruz's hand inside her pants, rubbing her clitoris.

In January 2012, B.A. began crying and told Grandmother that "Cruz used to try to kiss [her] and put his hands in [her] pants." *Id*. at 54. Grandmother asked her why she had not told her, and B.A. said that she was afraid that Grandmother would lose her babysitter. About a week later, the girls were together at Grandmother's home when they called for her. Grandmother responded and saw that A.A. was crying. B.A. told Grandmother that she should talk to A.A. Grandmother and A.A. went into the bathroom, and A.A. told her what Cruz had done. Grandmother asked her why she had not told her before, and A.A., screaming and crying, said that she was afraid to tell her.

The State charged Cruz with three counts of class A felony child molesting between December 1, 2009 and August 31, 2010 involving A.A., who was eleven years old: one count alleging sexual intercourse; one count alleging that he performed deviate sexual conduct; and one count alleging that he submitted to deviate sexual conduct. The State also charged Cruz with three counts of class C felony child molesting between December 1, 2009 and August 31, 2010 involving B.A., who was nine or ten years old, all alleging that he fondled or touched her with the intent to arouse or satisfy his or B.A.'s sexual desires.

Before trial, Cruz tendered a notice that he intended to offer evidence that someone else committed the acts of molestation. Following a hearing, the trial court ruled to exclude his proffered evidence.

At the end of trial, the jury failed to reach a verdict on the class A felony count alleging sexual intercourse with A.A. The trial court dismissed that count without prejudice. The jury found Cruz guilty of all remaining counts. The trial court sentenced Cruz to

concurrent terms of forty years for each class A felony conviction and concurrent terms of six years for each class C felony conviction to be served consecutive to the sentence for the class A felony convictions, for an aggregate term of forty-six years, all executed.

Cruz appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

*I. Sufficiency of the Evidence*

Cruz argues that the evidence is insufficient to support his convictions. In reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of witnesses, and we consider only the evidence that supports the verdict and the reasonable inferences arising therefrom. *Krebs v. State*, 816 N.E.2d 469, 471 (Ind. Ct. App. 2004). We "will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002), *cert. denied*. "A victim's testimony, even if uncorroborated, is ordinarily sufficient to sustain a conviction for child molesting." *Bowles v. State*, 737 N.E.2d 1150, 1152 (Ind. 2000).

Cruz's argument is merely an invitation to reweigh the evidence and judge the credibility of the witnesses, which we will not do. The victims' testimony is sufficient to support his convictions. *See id*.

*II. Admissibility of Evidence*

More than ten days before trial, Cruz tendered a notice to the court pursuant to Indiana Evidence Rule 412 that he intended to offer "evidence which shows that some person other

than [Cruz] committed the act upon which this prosecution is founded." Appellant's App. at 13. On the morning of the second day of trial, the trial court held a hearing on Cruz's Evidence Rule 412 notice. Defense counsel questioned A.A. about her interactions with Michael Miller. A.A. testified that her Grandmother obtained a protective order against forty-year-old Miller because Grandmother "thought he was being too close to [A.A.]" Tr. at 102. A.A. testified that she and Miller had never kissed one another or "[a]nything like that." *Id*. at 103. She also testified that she had never been alone with Miller inside his residence. The trial court ruled that "the evidence that the defense wishe[d] to elicit [] is [not] probative, in any sense, as to the possibility that a person other than the defendant committed the acts upon which this prosecution is founded." *Id*. at 105.

Cruz asserts that the trial court erred in excluding evidence he offered pursuant to Indiana Evidence Rule 412. We observe,

> The trial court has broad discretion in ruling on the admission or exclusion of evidence. A trial court's ruling on the admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented.

*Oatts v. State*, 899 N.E.2d 714, 719 (Ind. Ct. App. 2009) (citations omitted).

Indiana Evidence Rule 412(a) governs the admissibility of evidence of past sexual conduct and provides in relevant part that "[i]n a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted, except … evidence which shows that some person other than the defendant committed the act upon which the

6

prosecution is founded." If a party proposes to offer evidence under Rule 412, the party "must" comply with the following procedure:

> (1) A written motion must be filed at least ten days before trial *describing the evidence*. For good cause, a party may file such motion less than ten days before trial.

> (2) The court shall conduct a hearing and issue an order stating what evidence may be introduced and the nature of the questions to be permitted.

Ind. Evidence Rule 412(b) (emphasis added).

Although Cruz filed a notice pursuant to Evidence Rule 412, he failed to comply with the rule because his notice utterly fails to describe the evidence that he wished to introduce. Appellant's App. at 13. Accordingly he has waived this issue. *See Sallee v. State*, 785 N.E.2d 645, 651 (Ind. Ct. App. 2003) (concluding that defendant's failure to file notice as required by Indiana Evidence Rule 412 waived issue for review), *trans. denied*, *cert. denied*; *Graham v. State*, 736 N.E.2d 822, 826 (Ind. Ct. App. 2000), *trans. denied*.

Waiver notwithstanding, Cruz's argument is unavailing. A.A.'s testimony about Michael Miller simply does not tend to show that some person other than Cruz committed the molestations of A.A. and B.A. As such, the trial court did not abuse its discretion in excluding the evidence. Based on this conclusion and our conclusion above that there was sufficient evidence, we affirm Cruz's convictions.

### III. Inappropriateness of Sentence

Cruz argues that his forty-six-year sentence is inappropriate pursuant to Indiana Appellate Rule 7(B), which states, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is

inappropriate in light of the nature of the offense and the character of the offender." When reviewing a sentence, our principal role is to leaven the outliers rather than necessarily achieve what is perceived as the correct result. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "We do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). Cruz has the burden to show that his sentence is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218.

As for the nature of the offense, "the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed." *Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011). For a class A felony, the advisory sentence is thirty years, and the sentencing range is twenty to fifty years. Ind. Code § 35-50-2-4. For a class C felony, the advisory sentence is four years, and the sentencing range is two to eight years. Ind. Code § 35-50-2-6. "'[A]ppellate review should focus on the forest–the aggregate sentence–rather than the trees-consecutive or concurrent, number of counts, or length of the sentence on any individual count.'" *Pierce*, 949 N.E.2d at 352 (quoting *Cardwell*, 895 N.E.2d at 1225). For his two class A felony convictions and three class C felony convictions, involving two victims, Cruz received an aggregate sentence of forty-six years. His sentence is four years less than the maximum for a class A felony. Cruz asks us to revise his sentence to twenty years, the minimum sentence for a class A felony.

Cruz argues that the nature of the offenses does not support enhanced, consecutive sentences. We disagree. Our supreme court has stated that "crimes against children are

8

particularly contemptible." *Id.* In this case, Cruz was in a position of trust with the children, preying upon them multiple times, especially A.A., over the course of nine months. As a family friend, he used manipulation to have his way. He told A.A. not to tell anyone about what he did to her and bribed her with gifts. He also used force when the girls tried to resist his molestations. In her victim impact statement, A.A. wrote, "It makes me feel so angry that a grown man would do that to a little girl my age. He makes me sick. … He made me think I am different. He took my childhood and my inno[c]ence away." Presentence Investigation Report. She also wrote that Cruz told her that she "was his wife and … not a child anymore," so she should "get used to it." *Id.* The nature of Cruz's offenses warrants the enhanced sentences imposed by the trial court. Moreover, because two victims are involved, consecutive sentences are justified. *See Stetler v. State*, 972 N.E.2d 404, 409 (Ind. Ct. App. 2012) ("In general, when a defendant commits the same offense against two victims, enhanced and consecutive sentences are justified.") (citing *Serino v. State*, 798 N.E.2d 852, 857 (Ind. 2003)), *trans. denied*.

As for Cruz's character, he contends that his steady employment over the last seven years, lack of criminal history other than two convictions for driving under the influence, public service in volunteering as a children's soccer coach, and willingness to help others as shown by his monetary and food aid to Grandmother when she was laid off show that his sentence is inappropriate. Given that his crimes involved children, we are not persuaded that being a children's soccer coach is indicative of his good character. Likewise, because his crimes involved Grandmother's grandchildren, his aid to her was not the selfless act he

9

would like us to believe it was. While his employment history and negligible criminal history would not support enhancing his sentences, neither do they support sentences below the advisory.

Cruz likens his case to that of *Rivers v. State*, 915 N.E.2d 141 (Ind. 2009), in which our supreme court concluded that Rivers's sixty-year aggregate sentence was inappropriate. Rivers was convicted of two counts of class A child molesting and was sentenced to consecutive terms of thirty years on each count. Our supreme court observed that Rivers molested his niece on only two occasions in a relatively short period of time, had no prior convictions, maintained steady employment, stopped his criminal conduct on his own accord, and did not commit any other offenses in the seven years that had passed until he was charged. Our supreme court revised Rivers's sentences to concurrent, rather than consecutive, terms. *Rivers* is readily distinguishable because it involved a single victim. Further, the nature of the offenses and character of the offender are distinguishable. Rivers molested the victim twice rather than multiple times, had no prior convictions, and stopped molesting the victim on his own accord.

Cruz also compares his case to *Sanchez v. State*, 938 N.E.2d 720 (Ind. 2010). Sanchez was convicted of three counts of class A felony child molesting for three incidents involving his two stepdaughters. The trial court imposed forty-year sentences for each conviction, with concurrent terms for the convictions relating to the first victim to be served consecutive to the sentence involving the second victim, for an aggregate term of eighty years. Our supreme court concluded that Sanchez's sentence was inappropriate because he did not use force on

the girls or cause any injury; the offenses were isolated incidents, rather than systematic or repeated behavior; and Sanchez's criminal record consisted of a conviction for operating while intoxicated and pending charges of operating while intoxicated and false informing, none of which were related to the charged molestations. Our supreme court concluded that the aggravating circumstances were sufficient to justify enhanced sentences but not consecutive sentences, and revised Sanchez's sentence to forty years. Cruz's reliance on *Sanchez* is unavailing. Sanchez's sentence was revised to forty years, only six years less than Cruz received. Cruz's longer sentence is justified because, unlike Sanchez, Cruz engaged in ongoing and systematic molestation of A.A.

In sum, Cruz has failed to meet his burden to show that his sentence is inappropriate in light of the nature of his offenses and his character. Therefore, we affirm his forty-six-year sentence.

Affirmed.

BARNES, J., and PYLE, J., concur.

11