Cedric WEBB, Petitioner/Appellant,

v.

Michael P. LANE, Director of Illinois Department of Corrections, Respondent/Appellee.

No. 90–1139.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 18, 1990.

Decided Jan. 8, 1991.

Thomas Peters, Chicago, Ill., for petitioner/appellant.

Marcia L. Friedl, Asst. Atty. Gen., Neil F. Hartigan, Atty. Gen., Office of the Atty. Gen., Jack Donatelli, Asst. Atty. Gen., Office of the Atty. Gen., Criminal Appeals Div., Chicago, Ill., for respondent/appellee.

Before BAUER, Chief Judge, CUMMINGS and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Cedric Webb was sentenced to fifty years imprisonment for murder. After exhausting his state court remedies, Webb sought federal habeas relief under 28 U.S.C. § 2254. The district court granted respondent's motion for summary judgment. Webb's appeal raises five issues, four involving the excited utterance exception to the hearsay rule and one involving the dying declaration exception to the hearsay rule. Overall, Webb argues that the admission of certain statements of the victim violated his right to confrontation. We affirm.

## I.  FACTS

Initially, 28 U.S.C. § 2254(d) requires that in federal habeas proceedings this court presume as correct all factual deter-

minations made by the state court, unless an enumerated exception applies. *Sumner v. Mata*, 455 U.S. 591, 599, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982). Accordingly, the following is a synopsis of the Illinois court's factual findings regarding the five statements at issue. A complete recitation of the trial evidence is found in *People v. Webb*, 125 Ill.App.3d 924, 81 Ill.Dec. 134, 466 N.E.2d 936 (1984).

John Griffis ("Griffis") was shot six times in the back and side in an alley on May 19, 1982, around 11:15 p.m. Officer Stan Salabura ("Salabura"), responding to a call regarding the shooting, arrived on the scene a few minutes after the shooting and discovered Griffis covered in blood, moaning and calling for help. Salabura asked Griffis his name and he replied "John." After this question, Salabura asked Griffis if he knew who shot him. Griffis replied "Little Gage." [1] Shortly thereafter paramedics arrived on the scene and placed Griffis in an ambulance. Before Griffis was taken from the scene to the hospital, Salabura repeated his inquiry as to who shot him. Griffis again replied "Little Gage."

In the hospital emergency room, less than one hour after the shooting, Salabura's partner, Officer Magliano ("Magliano"), for the third time asked Griffis if he knew who shot him. Griffis again replied "Little Gage." Magliano observed that Griffis was conscious during their conversation, but was lying on an emergency gurney covered with bandages and attached to a catheter and an IV. Magliano inquired of Griffis if he knew why Little Gage shot him. Griffis replied that Little Gage tricked him into the alley and that it had something to do with his girlfriend. [2] Magliano also asked Griffis if he knew anybody that could help the police find his assailant. Griffis told Magliano to speak with Chris Taylor.

Between one and two hours later, Magliano returned to Griffis' room with Chris Taylor. At that time Magliano told Griffis that he had about a "fifty-fifty" chance of survival and that "it doesn't look good for you." After hearing this, Griffis raised himself up on the gurney and exclaimed to Taylor, "Chris, Little Gage did me, man. Little Gage did me, help him out. Help me get him."

Two days after the shooting Detective Swick and Detective Ryan brought five photographs, including one of the petitioner, to Griffis' hospital room. Swick showed Griffis the five photographs and asked him if he could identify his assailant. Because Griffis was unable to speak he indicated petitioner's picture as the man who shot him by nodding affirmatively. Six days later Griffis died. A jury convicted petitioner of Griffis' murder. The Illinois Appellate Court rejected Webb's claim on appeal that the admission of the victim's five statements violated his right to confrontation. The district court, finding no confrontation clause violation, denied Webb's § 2254 petition and granted summary judgment for the respondent.

## II.  ANALYSIS

### A.  Confrontation Clause

■ Essentially, Webb argues that the admission of Griffis' five statements, detailed above, violated his sixth amendment right to confront the witnesses against him. Griffis did not testify at Webb's trial. Thus, there was no literal confrontation clause violation. *Ferrier v. Duckworth*, 902 F.2d 545, 547 (7th Cir.1990). Even so, the confrontation clause is interpreted as a restriction on the prosecutor's use of hearsay to convict a defendant. *Ferrier*, 902 F.2d at 547.

■ While the confrontation clause limits the use of hearsay testimony, it does permit it under certain circumstances, despite the defendant's inability to confront the declarant. *Idaho v. Wright*, —— U.S.

---

1. Two witnesses, both acquainted with the petitioner for at least four years, testified that they knew Webb as "Little Gage". Petitioner's mother testified that "Renegade" is her son's only nickname that she is aware of.

2. Griffis was shot in the alley behind the building where his girlfriend, Charlene Hines, resides.

——, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990) (citing *Maryland v. Craig,* —— U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)). The Supreme Court recently reiterated the test for determining whether the admission of hearsay testimony violates the confrontation clause. The use of hearsay testimony does not violate the confrontation clause if the prosecutor can demonstrate (1) the unavailability of the declarant and (2) that the declarant's statement "bears adequate indicia of reliability." *Idaho,* 110 S.Ct. at 3146. *See also United States v. Harris,* 914 F.2d 927, 932 n. 2 (7th Cir.1990); *United States v. McClellan,* 868 F.2d 210, 214 (7th Cir.1989); *Smith v. Fairman,* 862 F.2d 630, 635 (7th Cir.1988), *cert. denied,* 490 U.S. 1008, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989). "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Idaho,* 110 S.Ct. at 3146. Indeed, this court has noted that it is not likely that a settled hearsay exception will violate any clause of the Constitution. *Ferrier,* 902 F.2d at 547. *Compare Lee v. McCaughtry,* 892 F.2d 1318, 1324 (7th Cir. 1990) ("violations of the confrontation clause have been found 'even though the statements in issue were admitted under an arguably recognized hearsay exception.'") (citation omitted).

This court consistently holds that the "excited utterance" exception is a "firmly rooted hearsay exception." *Ferrier,* 902 F.2d at 548; *Smith,* 862 F.2d at 636; *United States v. Moore,* 791 F.2d 566, 574 (7th Cir.1986). The Supreme Court has held that the dying declaration is a firmly rooted exception to the hearsay rule. *Pointer v. Texas,* 380 U.S. 400, 407, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965). Clearly the first prong of the test, unavailability of the declarant, was met in this case. Thus, Webb's confrontation clause argument must fail if the court properly admitted Griffis' testimony under the excited utterance and dying declaration exceptions.

1. Excited Utterance

■ The Illinois Appellate Court found that Griffis' first statement, made at the scene of the shooting and identifying the shooter as "Little Gage", was a genuine response to a startling event (being shot six times), was made in the absence of time to fabricate, was related to the shooting, and thus, was an excited utterance. *People v. Webb,* 125 Ill.App.3d at 932–33, 81 Ill.Dec. at 139–41, 466 N.E.2d at 941–42 (citing *People v. Poland,* 22 Ill.2d 175, 174 N.E.2d 804 (1961)). The court did not decide whether the three subsequent statements qualified as excited utterances because it found that they were merely cumulative of admissible evidence. The district court granted summary judgment in favor of the respondent, finding that all four statements were excited utterances made in response to the shooting.

Webb argues that Griffis' first statement was not an excited utterance because the state produced no evidence that Griffis was in an excited or emotional state. Additionally, Webb argues that the statement lacked spontaneity because it was made in response to Salabura's inquiry as to who shot him. The state produced sufficient evidence to demonstrate that Griffis was in an emotional state. Griffis had just been shot six times. Salabura testified that when he saw Griffis lying in the alley he was covered in blood and moaning and calling for help. The Illinois Appellate Court's finding that Griffis was in a state of excitement when he made the statement shall not be disturbed. *Moore,* 791 F.2d at 573.

Additionally, this circuit has held that a victim's statements relating to the circumstances of a violent crime may be admissible even though made in response to an inquiry. *Gross v. Greer,* 773 F.2d 116, 120 (7th Cir.1985). The record does not indicate that Griffis fabricated the statement or that it was the product of deliberation. Griffis made his identifying statement to Salabura while severely injured, bleeding profusely and in pain, and apparently within minutes of being shot six times. Given the violent nature of the crime and the injury Griffis sustained, answering Salabura's simple inquiry, "Do you know who shot you?", did not destroy the statement's spontaneity. *Id.* Griffis spoke under the

shock and excitement produced by the shooting. For the same reasons, Griffis' second identifying statement, made in the ambulance at the scene of the shooting, also qualifies as an excited utterance. This is true despite the fact that Griffis made it a few minutes after the first statement.

■ Petitioner next contends Griffis' third and fourth statements were inadmissable hearsay. He argues that too much time elapsed between the shooting and the statements, thus the statements improperly referred to a prior event. Further, petitioner argues that because the statements were in response to police questioning they were not spontaneous. However, even out-of-court statements referring to prior occurrences may be admissible as an excited utterance. *Moore*, 791 F.2d at 572. Moreover, it is well settled law in this circuit that the amount of time between the startling event and the hearsay statement, although relevant, is not dispositive as to the question of whether the statement is an excited utterance. *Smith*, 862 F.2d at 636. For a statement to qualify as an excited utterance it must "... be made contemporaneously with the excitement resulting from the event, not necessarily with the event itself." *Id.* (citing *Moore*, 791 at 572 n. 4).

Here, Griffis' third statement was made less then an hour after the shooting. Magliano testified that when he met with Griffis in the emergency room, Griffis was lying on an emergency gurney covered in bandages and attached to a catheter and an IV. "Physical factors such as pain may serve to prolong the period in which the risk of fabrication is reduced to an acceptable minimum." *Smith*, 862 F.2d at 636. When Griffis spoke with Magliano he was obviously in a great deal of pain.

Additionally, Webb's contention that the emergency room statements were erroneously admitted because they were made in response to police questioning lacks merit. Statements made in response to questioning may qualify as an excited utterance. *Gross*, 773 F.2d at 120 (citation omitted). The ultimate question is whether the statements were the product of reflective thought or whether they were the result of the startling event. *Id.* Thus, in *Gross*, this court held that a child's statements regarding her mother's murder, although made in response to police questioning, constituted excited utterances. *Id.* The court reasoned that the violent nature of the crime and the child's temperament at the time the statements were offered was sufficient protection against the dangers of fabrication and reflection. *Id.*

■ In the present case, the district court reasonably concluded that Griffis' statements were not the result of reflective thought. The statements followed an extremely violent experience, being shot six times. *See Puleio v. Vose*, 830 F.2d 1197, 1207 (1st Cir.1987) (" '[t]he remark followed ... a shooting—likely to produce the utmost in excitement and shock ... ensur[ing] the utterance's spontaneity....' "). At the time Griffis made the statements he was lying on an emergency room gurney severely injured and under the stress of the attack. Thus, the fact that the statements were made in response to Magliano's questions, although relevant, did not destroy their statements' spontaneity. *See United States v. Glenn*, 473 F.2d 191, 194 (D.C.Cir. 1972) (officer's questions, "What happened?" and "Who did it?", did not destroy spontaneity); *United States v. Kearney*, 420 F.2d 170, 175 n. 11 (D.C.Cir.1969) ("fact that statement made in response to questioning several hours after the precipitating event is not decisive").[3] The tremendous shock and stress caused by the shooting and Griffis' subsequent pain may well have postponed his opportunity to reflect.

---

**3.** Illinois case law is also not supportive of Webb's position. *See People v. Damen*, 28 Ill.2d 464, 472, 193 N.E.2d 25, 30 (1963) (police officer's question regarding what happened was insufficient to destroy spontaneity); *People v. San-* *chez*, 105 Ill.App.3d 488, 491, 61 Ill.Dec. 242, 245, 434 N.E.2d 395, 398 (questions such as "What happened?" and "Who did this to you?" were insufficient to destroy statement's spontaneity).

Griffis' fourth statement occurred between one and two hours after the shooting.[4] Even when viewing the facts in the light most favorable to the petitioner, the district court properly characterized the statement as an excited utterance.[5] As stated above, physical suffering serves to prolong the reflection period. *See Gross,* 773 F.2d at 119 (statements made twelve hours after the startling event qualified as excited utterances). Additionally, Griffis' shock was renewed when Magliano informed him that his chances of survival did not look good. When Griffis exclaimed "Little Gage did me in. . . .", he was not only experiencing the considerable shock and excitement caused by the shooting, but also the distress caused by learning of his marginal chances for survival. Griffis' statements thus qualified as excited utterances, and as such their subsequent admission did not violate Griffis' right to confrontation.[6]

### 2. Dying Declaration

■ To be admissible under the dying declaration exception to the hearsay rule, an out-of-court statement must be made while the declarant is conscious of impending death and under the belief that there is no chance of recovery. *Herrera v. Collins,* 904 F.2d 944, 949 (5th Cir.1990). The Illinois Appellate Court held that Griffis' identification of petitioner's photograph qualified as a dying declaration. The district court agreed. Petitioner argues that the respondent failed to prove that Griffis made the statement under the belief that he was about to die.[7]

Two days after the shooting, two officers went to Griffis' hospital room to show him a display of five photographs. Although Griffis was unable to speak, he identified the third photograph of Cedric Webb by nodding affirmatively. The Illinois Appellate Court found that approximately six hours before the identification Griffis communicated to his relatives his belief that he was going to die.[8] Webb contends that the identification was not a dying declaration because Griffis' belief that he was dying was not expressed contemporaneously with the identification.

■ The Seventh Circuit has not previously examined the question of whether a declarant's sense of impending death may be inferred. However, the Fifth Circuit has determined whether a declarant believes his death is imminent by looking at the facts and circumstances surrounding the out-of-court statement. *United States v. Mobley,* 421 F.2d 345 (5th Cir.1970). Additionally, the Supreme Court has long held that a declarant's sense of impending death may be inferred "from the nature and extent of the wounds inflicted being obviously such that he must have felt or known he could not survive." *Mattox v. United States,* 156 U.S. 237, 251, 15 S.Ct. 337, 343, 39 L.Ed. 409 (1895). Although the declarant must believe that death is imminent at

---

4. The record does not reveal how much time elapsed between the shooting and Magliano's return. The petitioner's brief says about two hours had elapsed, while the district court opinion and the respondent's brief state that Magliano returned to the hospital about an hour later.

5. Webb's argument that the district court wrongly assumed that Griffis' fourth statement qualified as a dying declaration is incorrect. The district court opinion indicates that it held that the fourth statement was an excited utterance.

6. Even if this court were to find that Griffis' later statements were not as spontaneous as those made at the scene of the shooting, no constitutional error resulted from their admission. The statements made at the hospital were

merely cumulative of properly admitted evidence. *United States v. Briscoe,* 896 F.2d 1476, 1503 (7th Cir.1990).

7. Petitioner also argues that Griffis' opportunity to see his attacker was limited because he was shot in the back in a dark alley. However, the appellate court found that the alley was well lit. Additionally, trial testimony linked the petitioner to the scene of the crime at the time of the shooting.

8. Petitioner's brief suggests that Griffis never informed his relatives that he believed he was going to die. However, we are bound by the Illinois Appellate Court's factual finding that when Griffis' wife inquired whether he thought he would die, he nodded his head "yes" and started to cry.

the time he makes the statement, it is not true, as petitioner contends, that the declarant's expression of his impending death must coincide with the statement.

 Here, Griffis lay in the hospital attached to a life support machine, suffering from six gunshot wounds. Trial testimony established Griffis' injuries as bullet wounds to the chest and abdomen causing laceration of his lung, liver, spleen, and intestine. It is reasonable to infer that Griffis knew about the seriousness of his condition. *See Mobley*, 421 F.2d at 347 (court looked at the gravity of declarant's wounds in determining his awareness of death). Additionally, two days before the identification Magliano informed Griffis of the doctor's belief that his chances for survival were not especially good. Approximately six hours before the photo identification Griffis communicated to his relatives that he believed he would die. These facts establish a basis from which the court could infer that Griffis believed death was imminent when he identified Webb's photograph. Thus the court reasonably concluded that petitioner's right to confrontation was not violated.[9] Accordingly, we affirm.

---

**9.** Respondent argues in the alternative that even if Griffis' hospital statements do not fit within a firmly rooted hearsay exception, they carried sufficient indicia of reliability so as not to offend the confrontation clause. Respondent attempted to demonstrate reliability through the use of corroborating evidence. As the petitioner correctly notes, this "bootstrap" argument is improper in light of the Supreme Court's recent decision in *Idaho v. Wright*, 110 S.Ct. at 3150. The Supreme Court held that the "presence of corroborating evidence more appropriately indi-

cates that any error in admitting the statement might be harmless." *Id.* at 3150–51. It concluded that reliability should be demonstrated by the "totality of circumstances" at the time of the declaration. *Id.* at 3148. In this case, the same factors which establish the admissibility of the statements as exceptions to the hearsay rule also demonstrate that the statements possess particularized guarantees of trustworthiness. Such factors include the shooting, the trauma and shock caused by the shooting, and the gravity and nature of Griffis' wounds.