**UNITED STATES of America**

v.

**Ricardo DELVI, et al., Defendants.**

**No. 01 CR.0074 SAS.**

United States District Court,
S.D. New York.

June 17, 2003.

Timothy J. Treanor, David M. Rody, Assistant United States Attorneys, United States Attorney's Office, Southern District of New York, New York City, for the Government.

Neil B. Checkman, New York City, Lee A. Ginsberg, Freeman, Nooter & Gins-

berg, New York City, Robert Koppelman, New York City, Daniel Nobel, New York City, Roger Stavis, Stavis & Kornfeld, LLP, New York City, for Defendants.

### *OPINION AND ORDER*

SCHEINDLIN, District Judge.

The Government intends to call retired Detective Jeremy Rosenberg of the New York City Police Department ("NYPD") to testify to certain events related to the murder of Earl Edwards and the shooting of Xavier Giles on December 19, 2000. The government seeks to admit, through Detective Rosenberg, a statement made to him by Giles approximately forty minutes after the shooting. Defendants object. For the reasons that follow, the statement is admissible as an "excited utterance" under Rule 803(2) of the Federal Rules of Evidence.

### I. FACTS

The shooting of Earl Edwards and Xavier Giles took place at approximately 6:50 p.m. *See* 6/9/03 Letter to the Court from Timothy J. Treanor and David M. Rody, Assistant United States Attorneys ("6/9/03 Govt. Ltr.") at 1. Giles suffered a gun shot wound to his hip from a .45 caliber handgun. *See id.* The slug penetrated his left buttock and exited his left hip. *See id.* Almost immediately after being shot, Giles ran a few blocks away from the crime scene and snorted a bag of heroin. *See* 12/10/00 Hospital Progress Record, Bates # 0117, Ex. A to 6/9/03 Letter to the Court from Neil B. Checkman, counsel for defendant Edgar Sanchez (6/9/03 Def. Ltr.).

Giles made one statement to an officer at the scene of the murder: "A beige van with burgundy stripes pulled up at the above location and a male Hispanic began to shoot. The van fled southbound on Hughes."[1]   6/12/03 Letter to the Court

---

1. It is not clear from the record whether the   snorting of heroin occurred before or after

from Treanor and Rody ("6/12/03 Govt. Ltr.") at 3.[2] Giles was not fully interviewed by the officer because he needed immediate medical attention. *See id.*

At approximately 7:00 p.m., Detective Rosenberg arrived on the scene. At that time, Earl Edwards had already been removed by Emergency Medical Services ("EMS") to Saint Barnabas Hospital and Giles had been placed in an ambulance to be taken to Jacobi Medical Center. *See* 6/9/03 Govt. Ltr. at 1. EMS reported that Giles was "ambulatory and oriented times 3." *See* Ambulance Call Report, Bates # 0110, Ex. A to 6/9/03 Def. Ltr. Rosenberg followed Giles to the hospital so that he could interview him more fully. *See* 6/12/03 Govt. Ltr. at 3.

At 7:30 p.m., Giles told Detective Rosenberg, in response to his questions, that just before the shooting, a van pulled up and two males exited. One was a male Hispanic, tall, and skinny with braided hair. A third male also got out of the van. The males from the van were talking to the homicide victim and one started shooting. Giles attempted to flee and was struck from behind. *See* 6/9/03 Govt. Ltr. at 2. Giles stated that he could identify the individuals who walked over from the van and described the shooter as a male Hispanic, 5'7", and chubby. *See id.*[3]

At the time the second statement was made, Giles was lying on a bed in the emergency room connected to medical monitoring equipment and was receiving intravenous fluids. He was bleeding from the entrance and exit wounds into the bed

sheets. *See* Photographs of Giles in Hospital, Ex. A to 6/12/03 Govt. Ltr.

## II. DISCUSSION

### A. Rule 803(2)

Rule 803(2) of the Federal Rules of Evidence excepts from the general exclusion of hearsay statements, even if the declarant is available, a "statement relating to a startling event or condition made while the declarant was under the stress of the excitement caused by the event or condition." Fed.R.Evid. 803(2). The rationale underlying the "excited utterance" exception is that "the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability." *United States v. Tocco,* 135 F.3d 116, 127 (2d Cir.1998); *see also United States v. Brown,* 254 F.3d 454, 458 (3d Cir.2001) ("[E]xcitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable"); *United States v. Joy,* 192 F.3d 761, 766 (7th Cir.1999) ("This exception is premised on the belief that a person is unlikely to fabricate lies (which presumably takes some deliberate reflection) while his mind is preoccupied with the stress of an exciting event."). "Thus, to qualify as an excited utterance, 'the declarant's state of mind at the time the statement was made [must] preclude[ ] conscious reflection on the subject of the statement.'" *United States v. Alexander,*

the statement of the officer.

**2.** The government also intends to offer this statement through the officer to whom it was made. Defendants do not object.

**3.** On December 28, 2000, Giles was shown a photo array that included defendant Edgar Marino Sanchez and Giles identified Sanchez

as the shooter. *See* 6/6/03 Letter to Defense Counsel from Treanor and Rody ("6/6/03 Govt. Ltr."). However, on two subsequent occasions, Giles was unable to identify Sanchez. *See id.* (stating that on January 10, 2001, Giles failed to identify Sanchez in a lineup and on May 22, 2003, Giles was unable to identify either Sanchez or defendant Ransais Garcia from separate photo arrays).

331 F.3d 116, 121–22 (D.C.Cir.2003) (quoting *Joy*, 192 F.3d at 766).

■ For a statement to qualify as an excited utterance, the proponent of the exception must establish: "(1) the occurrence of a startling event; (2) that the declarant made the statement while under the stress of excitement caused by the event; and (3) that the declarant's statement relates to the startling event." *Alexander*, at 122–23 (citations omitted). Unlike the hearsay exception for present sense impressions, *see* Fed.R.Evid. 803(1), "[a]n excited utterance need not be contemporaneous with the startling event to be admissible." *Tocco*, 135 F.3d at 127 (three-hour delay); *see also United States v. Scarpa*, 913 F.2d 993, 1017 (2d Cir.1990) (five or six hour delay); *Gross v. Greer*, 773 F.2d 116, 119–20 (7th Cir.1985) (twelve hour delay). "Rather the utterance must be contemporaneous with the excitement engendered by the startling event." *Joy*, 192 F.3d at 766 (citations omitted).

■ Although the lapse of time between the startling event and the statement is relevant to whether the declarant made the statement while under the stress of excitement, the temporal gap between the event and the utterance is not itself dispositive. *See United States v. Jones*, 299 F.3d 103, 112 (2d Cir.2002). Other relevant factors include: the characteristics of the event; the subject matter of the statement; whether the statement was made in response to an inquiry; and the declarant's age, motive to lie and physical and mental condition. *See United States v. Marrowbone*, 211 F.3d 452, 454–55 (8th Cir.2000).

■ There is no issue here as to whether a startling event occurred or whether the statement relates to the startling event. Defendants contend, however, that the statement was not made while under the stress of the excitement because: (1) Giles snorted heroin between the startling event and the statement, *see* 6/9/03 Def. Ltr. at 1; (2) the ambulance report described Giles as "ambulatory and oriented times 3," *see id.*; and (3) the statement was a narrative response to the detective's questions, *see* 6/13/03 Oral Argument Transcript at 2717. Defendants argue, in the alternative, that the statement should be excluded under Rule 403 because it is highly prejudicial and unreliable. *See* 6/9/03 Def. Ltr. at 2.

Although the statement was taken from Giles approximately forty minutes after the shooting, the excitement caused by having witnessed the murder of another individual and gotten shot himself had not dissipated. At the time the statement was taken, Giles was still bleeding from his wounds, was being treated by a doctor in a hospital emergency room, and was observed to have been in an excited state. It is hard to believe that Giles could not have been excited less than an hour after having experienced a startling event of the highest order. *See Puleio v. Vose*, 830 F.2d 1197, 1207 (1st Cir.1987) (" '[t]he remark followed ... a shooting—likely to produce the utmost in excitement and shock ... ensur[ing] the utterance's spontaneity....' "). Moreover, there is no apparent motive for Giles to have fabricated the statement, nor any indication from the statement itself that it was fabricated.[4]

---

4. In cases in which a statement has been found not to be an "excited utterance", there is typically some evidence of reflective thought. *See, e.g., United States v. Winters*, 33 F.3d 720, 722–23 (6th Cir.1994) (excluding identification made by victim two days after he was shot because he had "changed his story on more than one occasion," thereby indicating that the statement was the product of conscious reflection); *United States v. Mountain State Fabricating Co.*, 282 F.2d 263, 265–66 (4th Cir.1960) (excluding statement by unidentified bystander because speaker knew about the fire long before he made a statement about it, "spoke calmly", and gave impression that he was not excited).

*See Smith v. Fairman*, 862 F.2d 630, 636 (7th Cir.1988) ("Physical factors such as pain may serve to prolong the period in which the risk of fabrication is reduced to an acceptable minimum.") (citations omitted). On the contrary, the fact that the second statement was an elaboration of the first underscores the reliability of the statements.

The evidence that Giles used heroin between the startling event and the statement does not indicate that he was capable of reflection. Rather, Giles' long history of drug abuse suggests that his use of heroin immediately following the shooting was an automatic response to deal with the pain and stress of the event. There is also nothing about the nature and effects of heroin that would cause a user to hallucinate or fabricate statements, especially an addict like Giles. Indeed, in many cases that address the admissibility of an excited utterance, the declarant was in the hospital after having suffered an injury and presumably been administered medication. *See, e.g., United States v. Scarpa*, 913 F.2d 993, 1016 (2d Cir.1990) (statement made in hospital five or six hours after declarant had suffered severe beating); *Webb v. Lane*, 922 F.2d 390 (7th Cir.1991) (statements made in hospital two hours after declarant had been shot six times in chest and abdomen). Moreover, in all cases in which courts have admitted statements made hours after a startling event, there must have been events that transpired prior to the making of the "excited utterance." *See Alexander*, at 123–24 (assuming that declarants do not remain silent in the hours between a startling event and a statement related to that event and finding that declarant's intervening telephone call to her mother failed to establish that she was not under the stress of excitement when she later called 911). The fact that the intervening event in this case was drug use is immaterial.

The observation of emergency medical personnel merely indicates that Giles could move on his own and was responsive at the time EMS arrived. In fact, the words "ambulatory and oriented times 3" typically are used by medical personnel to describe an individual who is not physically or mentally incapacitated." The observation reveals nothing about the effect of the startling event on Giles' emotional state at the time or his capacity to fabricate a statement.

Lastly, the fact that the statement was a narrative made in response to Detective Rosenberg's questions—rather than an exclamation—does not indicate that Giles was not excited when he provided the answers. "Declarations relating to the circumstances of a violent crime, made by the victim shortly after its occurrence . . . may be admissible although made in response to an inquiry." *People of the Territory of Guam v. Cepeda*, 69 F.3d 369, 372 (9th Cir.1995) (internal quotation marks and citation omitted); *see also Joy*, 192 F.3d at 767 (finding fact that declarant was answering questions does not indicate that he was not excited when he provided the answers); *Webb*, 922 F.2d at 393 (finding fact that declarations were responses to questions did not destroy their "spontaneity"); *United States v. Glenn*, 473 F.2d 191, 193 (D.C.Cir.1972) (finding fact that declarations were prompted by questions of "what happened?" and "who did it?" did not destroy their spontaneity). Because "it is possible for someone to be excited to volunteer pertinent information . . . , the inherent 'guarantee of truthfulness' supporting the admission of excited utterances applies equally to declarations made in response to an inquiry." *Joy*, 192 F.3d at 767.

Because the evidence in this case strongly suggests that Giles was still under the stress and excitement of the

shooting when he made the statement to Detective Rosenberg, the statement is admissible as an "excited utterance."

## B. Rule 403

■ Defendants argue, in the alternative, that the statement should be excluded under the balancing test of Rule 403. Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by . . . needless presentation of cumulative evidence." Fed. R.Evid. 403. The sole basis for defendants' Rule 403 argument is that they will be severely prejudiced by the inability to confront the declarant. *See* 6/9/03 Def. Ltr. at 2.

■ The Supreme Court has recognized a "preference for live testimony" because cross-examination is " 'the greatest legal engine ever invented for the discovery of truth.' " *White v. Illinois,* 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (quoting *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)). "Thus courts have adopted the general rule prohibiting the receipt of hearsay evidence." *Id.* However, "where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." *Id.* These categories of hearsay statements "rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.' " *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (internal citation omitted). "Specifically, statements falling under 'firmly rooted' hearsay exceptions satisfy the Confrontation Clause because they

bear adequate 'indicia of reliability.' " *Brown v. Keane,* 229 F.Supp.2d 298, 303 (S.D.N.Y.2002) (quoting *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531); *see also* Fed. R.Evid. 802 Advisory Committee Note (explaining that under the circumstances set forth in Rule 802, a hearsay statement "possesses circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person at the trial even though they may be available"). The "excited utterance" exception is one such "firmly rooted" exception. *See White,* 502 U.S. at 356 n. 8, 112 S.Ct. 736.

The admission of Giles' statement will indeed be prejudicial to defendants, especially given that Giles was unable to subsequently identify two of the defendants. However, because I have found that Giles' statement is an "excited utterance," it bears the necessary guarantee of trustworthiness to satisfy defendants' right to confrontation and tip the balance in favor of admission. Thus, Rule 403 does not preclude admissibility.

## C. Rule 806

■ Defendants additionally argue that, if the "excited utterance" is admitted, they should be permitted to impeach Giles. Specifically, defendants seek to admit Giles': (1) conviction upon a plea of guilty to criminal possession of a weapon; (2) snorting of heroin after he was shot but before he made the statement to Detective Rosenberg; and (3) inability to identify defendant Garcia, a/k/a "Shorty", from a photo array shown to him on May 22, 2003.[5]

Rule 806 states, in pertinent part: "When a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked . . . by any evidence which would be admissible for

---

5. The parties have stipulated to these facts for purposes of this motion. *See* 6/17/03 Stipulation. The parties have also agreed not to

admit the evidence of Giles' positive and negative identifications of defendant Sanchez.

those purposes if declarant had testified as a witness." Fed.R.Evid. 806. The rationale for the rule has been explained as follows: "The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment ... as though he had in fact testified." Fed. R.Evid. 806 Advisory Committee Note (citing Rules 608 and 609). Thus, Rule 806 renders the rules regarding impeachment evidence—Rules 608 and 609 [6]—applicable to a declarant's out-of-court statements. *See United States v. Moskowitz,* 215 F.3d 265, 270 (2d Cir.2000); *United States v. Robinson,* 783 F.2d 64, 67 (7th Cir.1986). A hearsay declarant may also be impeached by showing that he made inconsistent statements. *See United States v. Trzaska,* 111 F.3d 1019, 1024 (2d Cir.1997) (citations omitted).

Because I have found that Giles' hearsay statement is admissible and all the evidence defendants seek to admit would be admissible if Giles were to testify, defendants may offer the aforementioned evidence pursuant to Rule 806.

## III. CONCLUSION

For the foregoing reasons, the Government may introduce the "excited utterance" of Xavier Giles made at the Jacobi Medical Center through the testimony of Detective Jeremy Rosenberg.

SO ORDERED.

---

**6.** Under Rule 608(b), "[s]pecific instances of the conduct of a witness ... may ... in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness ... concerning the witness' character for truthfulness or untruthfulness." Fed.R.Evid. 608(b).

Under Rule 609(a)(1), "evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and ... the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed.R.Evid. 609(a)(1).