


FILED

Sep 04 2024, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

## Maurice McGraw, Jr.

*Appellant/Defendant*

v.

## State of Indiana,

*Appellee/Plaintiff*

---

**September 4, 2024**

Court of Appeals Case No.
24A-CR-16

Appeal from the Marion Superior Court

The Honorable Angela Dow Davis, Judge

Trial Court Cause No.
49D27-2210-F3-27157

---

**Opinion by Judge Bradford**
Judge Crone concurs with opinion and Judge Tavitas concurs in part
and dissents in part with opinion.

**Bradford, Judge.**

## Case Summary

[1] In September of 2022, Maurice McGraw, Jr., went to the residence of his sometime girlfriend T.N., with whom he had a then-one-year-old child. McGraw, apparently suspecting that T.N. had become romantically involved with another, punched T.N. in the nose and face, kicked her, and dragged her back inside by the hair when she tried to leave, all in the presence of their child, causing two facial fractures. T.N. called 911 and identified McGraw as her assailant. A jury convicted McGraw of Level 5 felony domestic battery causing serious bodily injury and Level 6 felony domestic battery occurring in the presence of a child, and the trial court sentenced him to six years of incarceration with three years suspended to probation. McGraw contends that the trial court abused its discretion in admitting several items of evidence and that his convictions violate prohibitions against double jeopardy. We affirm.

## Facts and Procedural History

[2] In September of 2022, McGraw and T.N. were in an on-again-off-again relationship and were the parents of then-one-year-old M.N. On September 30, 2022, T.N. began getting M.N. ready for bed and was preparing his bottle when McGraw arrived to collect some of his belongings. T.N. walked to her bedroom with M.N. in her arms, and McGraw followed. (McGraw accused T.N. of "messing around with someone" and tried to access her telephone. Ex.

Vol. I p. 66. When T.N. refused to give McGraw access, he punched her on the left side of her head.

[3] T.N. walked to the living room, and McGraw followed, saying, "'I'll dock yo a[**] out,' and 'b[****] you are not going no where.'" Ex. Vol. I p. 66. McGraw punched T.N. in the face and nose, kicked her, and told her that he was going to kill her. When T.N. tried to leave through a sliding glass door, McGraw dragged her back into the house by her hair. T.N. was short of breath, dizzy, and wheezing. McGraw gathered his things and walked outside. T.N. quickly locked the door behind him, but McGraw broke through it.

[4] When McGraw left again, T.N. ran outside and flagged down a motorist, using his telephone to call 911 and then her mother. T.N. told the 911 dispatcher that "[m]y baby daddy just beat me up […] Maurice McGraw." State's Ex. 16 at 0:15–0:16, 0:59. Indianapolis Metropolitan Police Officer Elizabeth Saxon was the first officer to arrive, and T.N. told Officer Saxon that McGraw had battered her. Upon arrival at Community Hospital East, T.N. was diagnosed with a fracture on the orbital wall outside of her right eye and a zygomatic fracture over her left eye. After being treated in the emergency department, T.N. was seen by forensic nurse Jessica Cardenas of the Center of Hope, which conducts forensic examinations of alleged victims of violence. T.N., who was free to decline the assessment from Center of Hope, told Cardenas that McGraw had caused her injuries.

[5] On October 5, 2022, the State charged McGraw with Level 3 felony criminal confinement, Level 4 felony unlawful possession of a firearm by a serious

violent felon, Level 5 felony domestic battery resulting in serious bodily injury, Level 5 felony theft, Level 6 felony domestic battery occurring in the presence of a child, and Level 6 felony neglect of a dependent. McGraw's jury trial began on April 25, 2023. T.N. testified that she did not remember the details of her interaction with McGraw on September 30, 2022, or the details of her conversation with Officer Saxon. The audio recording of T.N.'s 911 call, in which she identified her assailant as McGraw, was played for the jury, with no objection from McGraw. Officer Saxon and Cardenas testified, over McGraw's objections, that T.N. had told them that McGraw had assaulted her. The jury found McGraw guilty of Level 5 felony domestic battery and Level 6 felony domestic battery, and, on December 22, 2023, the trial court sentenced him to an aggregate sentence of six years of incarceration with three years suspended to probation.

## Discussion and Decision

### I. Evidence

The trial court has broad discretion in ruling on the admission or exclusion of evidence. *Salle v. State*, 785 N.E.2d 645, 650 (Ind. Ct. App. 2003), *trans. denied*. A ruling on the admissibility of evidence will be disturbed only upon showing an abuse of discretion. *Id*. A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it. *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001).

### A. T.N.'s Statements Identifying McGraw as her Assailant

[6] McGraw contends that the trial court abused its discretion in admitting T.N.'s statements to Officer Saxon and Cardenas, in which she identified him as the person who had battered her, because they were inadmissible hearsay. Hearsay is "a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay is not admissible except as provided by law or by other court rules. Ind. Evidence Rule 802.

### 1. Statement to Officer Saxon

[7] The State argues that T.N.'s statement to Officer Saxon is admissible as an excited utterance. For a statement to be admitted as an excited utterance, three elements must be met: a startling event occurred, the declarant was still under the stress of the startling event when she made the statement, and the statement concerned the startling event. *Boatner v. State*, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010) (citation omitted). The timing of the statement in relation to the startling event is not dispositive, and the inquiry ultimately focuses on whether the statement was reliable. *Id.*

[8] We conclude that the trial court did not abuse its discretion in concluding that T.N.'s identification to Officer Saxon of McGraw as her assailant was admissible as an excited utterance. When Officer Saxon spoke with T.N., she was crying, nervous, scared, stressed, and appeared to be in and out of shock. T.N.'s face, knees, and feet were visibly injured, and Officer Saxon was concerned that T.N. was going to pass out from her injuries. T.N. reported,

even after being taken to the hospital following her conversation with Officer Saxon, that her pain level was nine out of ten. This is sufficient to establish that T.N. was still under the stress of the startling event when she identified McGraw as her assailant to Officer Saxon. The trial court did not abuse its discretion in admitting that identification as an excited utterance. *See, e.g.*, *id.* (concluding that statements made by declarant who was crying and disoriented were excited utterances).

[9] McGraw argues that T.N. had had time to recover from the stress of the startling event.

> While a declaration is generally less likely to be admitted if it is made long after the startling event, *e.g.*, *Lewis v. State*, 554 N.E.2d 1133 (Ind.1990), *reh'g denied*, the amount of time that has passed is not dispositive. *Webb v. Lane*, 922 F.2d 390, 394 (7th Cir. 1991). In some cases, we have held hearsay declarations made minutes after the startling event to be inadmissible. *See, e.g.*, *Kelley v. Dickerson*, 213 Ind. 624, 13 N.E.2d 535 (1938), (statement 15 minutes after auto accident inadmissible). However, in other cases statements made hours after the event were admitted. *Webb*, 922 F.2d at 395. Again, the central issue is whether the declarant was still under the stress of excitement caused by the startling event when the statement was made. 13 R. MILLER, INDIANA PRACTICE § 803.102 at 607 (2d ed. 1995) ("Inquiry under Rule 803(2) focuses on whether the declarant remained excited").

*Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind. 1996). As McGraw notes, the record is not clear regarding the amount of time that had passed between the startling event and T.N.'s statement to Officer Saxon. That said, because the record contains ample evidence to support an inference that T.N. was still under the stress of her battery when she spoke with Officer Saxon, the amount

of time that had passed is a secondary consideration, at best, under the circumstances. McGraw's argument is nothing more than a request to reweigh the evidence, which we will not do. *Alkhalidi v. State*, 753 N.E.2d 625, 627 (Ind. 2001); *see also* Ind. Evidence Rule 104 ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible.").

### 2. Statement to Cardenas

McGraw also challenges the admission of T.N.'s statement to Cardenas that he was her assailant. Statements made for the purpose of receiving medical treatment are an exception to the hearsay rule. Ind. Evidence Rule 803(4); *Walters v. State*, 68 N.E.3d 1097, 1100 (Ind. Ct. App. 2017), *trans. denied*. This exception is based on the understanding that a person is unlikely to lie to medical professionals because doing so might jeopardize the provider's ability to treat her. *VanPatten v. State*, 986 N.E.2d 255, 260 (Ind. 2013). A two-step analysis applies to evidence that is admitted pursuant to Evidence Rule 803(4): First, "is the declarant motivated to provide truthful information in order to promote diagnosis and treatment," and second, "is the content of the statement such that an expert in the field would reasonably rely on it in rendering diagnosis or treatment." *Id.* McGraw contends only that the first requirement was unsatisfied here. The State argues that there is sufficient evidence in the record to sustain a reasonable inference that T.N. was highly motivated to provide truthful information to Cardenas in order to promote her diagnosis and treatment.

[11] We need not address this claim on the merits; in light of the recording of T.N.'s 911 call and Officer Saxon's testimony, any error the trial court might have made in admitting Cardenas's testimony can only be considered harmless. Errors in the admission of evidence "are to be disregarded as harmless unless they affect the substantial rights of the party." *Mathis v. State*, 859 N.E.2d 1275, 1280 (Ind. Ct. App. 2007). An error in the admission of evidence may be harmless when the evidence is merely cumulative of other properly admitted evidence. *Id*. Because it was, as best, cumulative of other identification evidence, any error the trial court may have made in the admission of Cardenas's testimony was harmless.

## B. Medical Records

[12] McGraw contends that the trial court abused its discretion in admitting statements that were contained in T.N.'s medical records, which were admitted as business records, regarding the nature and extent of her injuries, specifically that she had sustained two orbital fractures and would need surgery. As with McGraw's previous argument, any error the trial court may have committed in this regard can only be considered harmless. *See id*. T.N. testified that, after evaluation and x-rays at the hospital on the night in question, she had been diagnosed with fractures on the right side of her face. While T.N. also testified that she had not been told that she needed to return for surgery, we fail to see how this inconsistency could have affected the verdict, as it bears no obvious relationship to any of the elements of either of McGraw's convictions. *See id*.

## II.  Double Jeopardy

[13] McGraw contends that his convictions for Level 5 felony and Level 6 felony domestic battery violate Indiana's prohibitions against double jeopardy. Whether convictions violate Indiana's prohibition against double jeopardy is a question of law reviewed *de novo*. *Wadle v. State*, 151 N.E.3d 227, 237 (Ind. 2020) (citing *A.M. v. State*, 134 N.E.3d 361, 364 (Ind. 2019)).  In *Wadle*, the Indiana Supreme Court held that Article 1, section 14, of the Indiana Constitution applies only to "successive prosecutions for the same offense." *Wadle*, 151 N.E.3d at 245–46.

[14] "Substantive double-jeopardy claims principally arise in one of two situations: (1) when a single criminal act or transaction violates multiple statutes with common elements, or (2) when a single criminal act or transaction violates a single statute and results in multiple injuries." *Powell v. State*, 151 N.E.3d 256, 263 (Ind. 2020).  The analysis laid out in *Wadle* governs the first category of cases, while *Powell*'s analysis covers the second. *Id.*  As an initial matter, the parties seem to disagree on what type of case this is, with the State urging use of the *Powell* analysis while McGraw cites to *Wadle*.  While it is true that the two offenses for which McGraw was convicted are defined in the same section of the Indiana code (which could be characterized as a "single statute"), we nonetheless agree with McGraw that *Wadle* governs this case, not *Powell*.  *Powell* explicitly states that the question in cases to which it applies is "not whether one offense is included in the other [but i]nstead […] whether 'the same act may be twice punished' as 'two counts of the *same* offense.'" *Powell*, 151 N.E.3d at

263 (citation and footnote omitted, emphasis in *Powell*). It seems clear that if two offenses have different elements, they are not, in fact, the "same offense." For purposes of double-jeopardy analysis, different subsections detailing different elements should be treated as "multiple statutes" pursuant to *Wadle*, even if they are subsections of the same section of the Indiana Code.

[15] That said, *Wadle* provides that when a single criminal act violates multiple statutes with common elements and one or more victims, courts "first look to the statutory language" for each charge. 151 N.E.3d at 248. If the language of either statute "clearly permits" multiple punishments, there is no double-jeopardy violation. *Id.* Here, neither of the relevant subsections of Indiana Code section 35-42-2-1.3 clearly permits multiple punishments,[1] so we proceed to step two.

[16] The second step is to determine whether either of the offenses is inherently or factually included in the other, both of which McGraw claims are the case. *Wadle*, 151 N.E.3d at 248. An offense that is inherently included in another is one that

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

---

[1] Neither of the relevant subsections explicitly provides that an act that violates it may also be punished pursuant to any other provision of the Indiana Code.

(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Ind. Code § 35-31.5-2-168. An offense is factually included in another if the charging information alleges "that the means used to commit the crime charged include all of the elements of the alleged lesser included offense." *Norris v. State*, 943 N.E.2d 362, 368–69 (Ind. Ct. App. 2011), *trans. denied*. The Indiana Supreme Court has recently clarified that "when assessing whether an offense is factually included, a court may examine only the **facts as presented on the face of the charging instrument**." *A.W. v. State*, 229 N.E.3d 1060, 1067 (Ind. 2024) (emphasis in *A.W.*). "Step 2 has core constraints: it does not authorize courts to probe other facts, such as evidence adduced from trial." *Id.* "The factually included inquiry at this step is thus limited to facts on the face of the charging instrument." *Id.* "'If neither offense is an included offense of the other (either inherently or as charged), there is no violation of double jeopardy' and the analysis ends—full stop." *Id.* at 1071 (quoting *Wadle*, 151 N.E.3d at 248).

[17] We have little trouble concluding that neither McGraw's Level 6 felony domestic battery charge nor his Level 5 felony is included in the other, either inherently or as charged.

> [A] person who knowingly or intentionally […] touches a family or household member in a rude, insolent, or angry manner […] commits domestic battery[,]
> [….]
> > a Level 6 felony if [t]he person who committed the offense is at least eighteen (18) years of age and committed the offense

against a family or household member in the physical presence of a child less than sixteen (16) years of age, knowing that the child was present and might be able to see or hear the offense [….]

[and] is a Level 5 felony if [t]he offense results in serious bodily injury to a family or household member.

Ind. Code § 35-42-2-1.3(a), -1.3(b)(2), -1.3(c)(1). As can readily be seen, the relevant statutory language for each of the two offenses contains at least one element the other does not: the Level 5 felony requires proof of serious bodily injury and the Level 6 felony requires proof that the domestic battery was committed in the presence of a child, knowing that the child was present and might have been able to see or hear it. This is not, as McGraw argues, a situation where the two provisions differ only in that one involves a "less serious harm or risk of harm" than the other; the two offenses involve different harms entirely. *See* Ind. Code § 35-31.5-2-168(3).

[18] Similarly, neither of McGraw's offenses, as charged, is factually included in the other. The charging information for McGraw's two offenses provides as follows:

> COUNT III
> On or about September 30, 2022, MAURICE MCGRAW Jr. did knowingly or intentionally touch [T.N.], a family or household member, in a rude, insolent or angry manner, resulting in serious bodily injury, that is: extreme pain from multiple injuries sustained by [T.N.], including, two orbital fractures;
> [….]
> COUNT V
> On or about September 30, 2022, MAURICE MCGRAW Jr. being at least eighteen (18) years of age, did knowingly touch [T.N.], a family or household member, in a rude, insolent, or

angry manner, and MAURICE MCGRAW Jr. committed said offense in the presence of a child less than 16 years of age, knowing that the child was present and might be able to see or hear the offense[.]

Appellant's App. Vol. II p. 29. The evidence tending to prove T.N.'s serious bodily injury does nothing to establish that the offense took place in the presence of a child who might have been able to see or hear it, and vice versa.[2] McGraw has failed to establish a substantive double-jeopardy violation.

[19] We affirm the judgment of the trial court.

Crone, J., concurs with opinion.

Tavitas, J., concurs in part and dissents in part with opinion.

ATTORNEY FOR APPELLANT

Lisa Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEES

---

[2] Because neither of McGraw's offenses is inherently or factually (as charged) included in the other, we need not proceed to step three of the *Wadle* analysis; put another way, we engage in no analysis of the evidence actually presented at trial.

> If a court has found that one offense is included in the other—either inherently or as charged—the court must then (and only then) "examine the **facts underlying those offenses**, as presented in the charging instrument and as adduced at trial." *Wadle*, 151 N.E.3d at 249 (emphasis added) (citing *Bigler v. State*, 602 N.E.2d 509, 521 (Ind. Ct. App. 1992), *trans. denied*). Step 3 functions as a cabined version of *Richardson*'s actual evidence test, and it serves an important, practical role in our double jeopardy analysis: to facilitate the distinction between what would otherwise be two of the "same" offenses. *See id.* at 249 n.27. So, at this final step, a court may only then probe the underlying facts—as presented in the charging instrument and adduced at trial—to determine whether a defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Id.* at 249.

*A.W.*, 229 N.E.3d at 1071.

Theodore E. Rokita
Indiana Attorney General

Alexandria Sons
Deputy Attorney General
Indianapolis, Indiana

Crone, Judge, concurring.

[20] I concur with the lead opinion's disposition of the evidentiary issues raised by McGraw. And I reluctantly agree that McGraw's convictions do not violate prohibitions against double jeopardy under *Wadle* as that test is currently structured.

[21] I write separately to point out that T.N.'s statement to forensic nurse Cardenas that McGraw was her assailant was not made for the purpose of receiving medical diagnosis or treatment, and therefore Cardenas's testimony regarding this statement should have been excluded as inadmissible hearsay. T.N. had already been diagnosed and treated by the time she spoke with Cardenas, who testified that her role is to document patients' injuries and share information with law enforcement. *See* Tr. Vol. 3 at 187 ("So we get consents if the patient would like … photos of their injuries and if they would like any of the information released to law enforcement."), 188 ("I get information about the person that was the assailant and where it happened and when…. I would like to know where the incident happened just so that we … can notify the correct law enforcement jurisdiction, and then for safety planning for the patient."). It was error to admit Cardenas's testimony regarding T.N.'s statement. I agree with my colleagues that the error was harmless, but write separately in hopes of providing future guidance on this issue.

[22] I also feel compelled to comment on our supreme court's abandonment of the "actual evidence" test from *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), in favor of the *Wadle* test. In seeking to provide clarity, the court instead sowed

confusion. When the court did away with *Richardson*, it took away flexibility and replaced it with rigid logic flowing from federal substantive double jeopardy standards. Instead of looking to the evidence used to convict in the first instance and concluding that the State has proven only one act and is seeking two punishments, we must now apply this new test, which kept two parts of former double jeopardy analysis: lesser included offenses (a statutory creation) and the continuing crime doctrine (an old common law theory). This test does not work well in a case like this because it is reminiscent of federal jurisprudence and our law does not work like federal law.

[23] Federal courts use a "unit of prosecution" analysis for substantive double jeopardy to make things easier. *See, e.g.*, *United States v. Haynes*, 62 F.4th 454, 460 (8th Cir. 2023) ("If a defendant is charged with a single crime in multiple counts, those counts are multiplicitous, and subjecting the defendant to multiple punishments violates the Double Jeopardy Clause of the Fifth Amendment. The operative question is whether the facts underlying each count were intended by Congress to constitute separate units of prosecution.") (citations and quotation marks omitted). And that analysis works as a cohesive theory in the federal system because of the comprehensive legislative history regarding where Congress delineated each unit of prosecution, which is the precise act that Congress sought to penalize.

[24] But without such legislative history in Indiana, we struggle to discern between statutory elements and units of prosecution and to make any sense of this. I believe that Judge Tavitas's analysis is more sensible and sound, but I am

compelled by supreme court precedent to agree with Judge Bradford's application of the *Wadle* test, which has led to a result that seems illogical and unjust. *A.W. v. State* appears to be a recognition by our supreme court that its new double jeopardy jurisprudence requires further fine tuning. I hope that fine tuning continues.

**Tavitas, Judge, concurring in part and dissenting in part.**

[25] I agree with Judge Bradford that the trial court did not abuse its discretion by admitting the evidence in this case. I respectfully dissent, however, from Judge Bradford's conclusion that the two domestic battery convictions here do not constitute double jeopardy under *Wadle*. I would hold that McGraw's convictions constitute double jeopardy because the offenses are inherently included and draw from the same transaction.

[26] I agree with Judge Bradford that, under *Wadle* step one, the domestic battery statute here does not clearly permit multiple punishment, and we, therefore, proceed to step two. In step two, however, McGraw's convictions constitute inherently included offenses under Indiana Code Section 35-31.5-2-168(3), which provides that an offense is an "[i]ncluded offense" if it "differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission."

[27] Here, the domestic battery offenses were premised on the same conduct—rude, insolent, or angry touching of T.N., a family or household member. Ind. Code § 35-42-2-1.3(a)(1); *see Kerner v. State*, 178 N.E.3d 1215, 1231 (Ind. Ct. App. 2021) (finding significant, when determining whether offenses are included under Indiana Code Section 35-31.5-2-168(3), whether the offenses each require "some conduct the other does not"), *trans. denied*. The offenses here only differed with respect to circumstances that enhanced the level of

the offense; McGraw was convicted of: (1) domestic battery as a Level 5 felony because of the victim's serious bodily injuries; and (2) domestic battery as a Level 6 felony because the battery occurred in the presence of a child. Ind. Code § 35-42-2-1.3(b)(2), -(c)(1).

[28] By codifying domestic battery resulting in serious bodily injury as a Level 5 felony and domestic battery in the presence of a child as a Level 6 felony, our legislature has implicitly determined that the former enhancing circumstance is more serious than the latter. I would, thus, hold that the two battery offenses here constitute included offenses because the underlying conduct is the same, and each offense only differs from the other "in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission." Ind. Code § 35-31.5-2-168(3); *cf. Massey v. State*, 803 N.E.2d 1133, 1138 (Ind. Ct. App. 2004) (holding that aggravated battery as a Class B felony and battery as a Class C felony were included offenses under Indiana Code Section 35-31.5-2-168(3)) (citing *Simmons v. State*, 793 N.E.2d 321, 326 (Ind. Ct. App. 2003)), *trans. denied*. This holding is also consistent with *Wadle*'s recognition that the enhancement, or "elevation," of an offense is "not a separate offense or conviction." *Wadle v. State*, 151 N.E.3d 227, 254 (Ind. 2020).

[29] Having concluded that the offenses are inherently included here, analysis under *Wadle step* three is required. Under this step, we examine the facts

underlying the offenses, "as presented in the charging instrument and as adduced at trial." *Id*. at 249. "Based on this information, a court must ask whether the defendant's actions were so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Id*. If the defendant's acts constitute a single transaction, the multiple convictions constitute double jeopardy. *Id*.

[30] Here, the State charged McGraw, in part, with two counts of domestic battery. The first charge alleged that McGraw "did knowingly or intentionally touch [T.N.], a family or household member, in a rude, insolent or angry manner, resulting in serious bodily injury, that is: extreme pain from multiple injuries sustained by [T.N.], including, two orbital fractures." Appellant's App. Vol. II p. 29. As for the second charge, the State alleged that McGraw, "being at least eighteen (18) years of age, did knowingly touch [T.N.], a family or household member, in a rude, insolent, or angry manner" and that McGraw "committed said offense in the presence of a child less than 16 years of age, knowing that the child was present and might be able to see or hear the offense." Id.

[31] The facts presented at trial indicate that, on or about the evening of September 30, 2022, McGraw struck T.N. in front of their child in several places around the residence because McGraw believed T.N. was "messing around with someone" else. Ex. Vol. I p. 66. Although the State charged McGraw with two counts of domestic battery—one because of T.N.'s

injuries and one because of the presence of the child—the facts show that the acts draw from the same transaction under *Wadle*; McGraw's acts occurred within a compressed period of time, in the same general location, and all shared the same principal purpose.

[32] Accordingly, under *Wadle* step three, McGraw's two domestic battery convictions constitute double jeopardy.